Richard MADSEN and Gae Madsen, individually and as guardian ad Litem for Sharleen Madsen, a minor and Karen L. Harwood, individually and as guardian ad litem for Brandy Alisa Owens, a minor, Plaintiffs and Respondents,

v.

SALT LAKE CITY SCHOOL BOARD, Defendant, Third-Party Plaintiff and Appellant,

v.

SALT LAKE CITY, a municipal corporation, A. R. Faddis, and LaRae Magana, Third-Party Defendants.

No. 17266.

Supreme Court of Utah.

April 6, 1982.

P. Keith Nelson and Nelson L. Hayes of Richards, Brandt, Miller & Nelson, Salt Lake City, for defendant, third-party plaintiff and appellant.

David A. Goodwill, Salt Lake City, for Madsen & Harwood.

David W. Slagle, Salt Lake City, for Salt Lake City & Faddis.

Jerry R. Kennedy, Salt Lake City, for Magana.

CROFT, District Judge:

This case is before this Court upon an intermediate appeal to review orders of the district court. The case has been pending in that court for over four years and the entire record of all proceedings had in the district court is included in the record on appeal.

The case arises out of an automobile-pedestrian accident which occurred on May 26, 1976, between an automobile driven by one LaRae Magana, a third-party defendant (hereinafter Magana) and two five year old school children, Sharleen Madsen and Brandy Alisa Owens, on whose behalf this action was filed by their respective guardians ad litem (hereinafter plaintiffs). The collision occurred in a crosswalk near Nibley Park School in Salt Lake City, Utah at which school the two children were students. That school was operated by the defendant Salt Lake City School Board (hereinafter appellant or school board). At the time and place mentioned, one A. R. Faddis (hereinafter Faddis) was a crossing guard then in the employment of Salt Lake City (hereinafter City). Both Faddis and the City are also third-party defendants in the case.

Prior to the filing of the complaint on October 14, 1977, initiating this action, plaintiffs made a settlement with the City, Magana and Faddis. The complaint named only the appellant as a party defendant, alleging negligence of the School Board as a basis for the claim asserted. The appellant filed a third-party complaint against the City, Magana and Faddis alleging it was entitled to contribution from each of these third-party defendants under Utah's Comparative Negligence Law, § 78–27–39 of which provides that the right of contribution shall exist among joint tort-feasors. The City then filed a motion to dismiss the third-party complaint alleging as grounds therefore that it failed to allege compliance with §§ 63–30–13, 14 and 19 of the Governmental Immunity Act,[1] and further, that the action was barred by §§ 63–30–15 and 21 of that Act. The district court's ruling on the City's motion to dismiss has a relationship to the subsequent district court proceedings and rulings which are the basis of this intermediate appeal.

Although, as noted supra, the City's motion to dismiss mentioned other statutory grounds, it appears from the record before us that argument on the motion focused on the provisions of § 63–30–21 of the Governmental Immunity Act which then provided that:

Notwithstanding any other provisions of this Act, no claim hereunder shall be brought by ... any ... governmental entity.

This section was repealed by the 1978 Legislature.[2]

That motion to dismiss was argued before Judge David K. Winder[3] whose ruling thereon was set forth in a written order of March 2, 1978, the preamble to which recited that Judge Winder had ruled in open court that the motion was "well taken" but that "the parties" had agreed orally in open court that the City should remain a party to the litigation. That order provided that:

... the Third-Party Complaint of the Salt Lake City School Board not be dismissed as to third-party defendant Salt Lake City Corporation at this time, but rather, the prayer of the Third-Party Complaint with regard to contribution and indemnity be stricken and amended to include a prayer that the trial court determine only the degree of negligence, if any, of the third-party defendant Salt Lake City Corporation.

Counsel for plaintiffs was present at the hearing on that motion, and although he filed no written joinder in the motion which related only to the third-party complaint, said counsel on April 3, 1978, filed a Notice of Intent to Appeal on behalf of plaintiffs from Judge Winder's order, reciting therein that plaintiffs had "joined in" the motion to dismiss and wished to preserve their right to appeal from that order. No petition for an intermediate appeal for a hearing on that interlocutory order in this Court was ever filed by plaintiffs.

Thereafter, extensive discovery followed with the City participating therein. Trial was set at long last for August, 1980, but on July 23, 1980, plaintiffs filed a Motion to Dismiss the third-party complaint against the City and for a ruling from the court that, as a matter of law, no negligence can be attributed to the City. The motion recited the proceedings summarized above to the effect that the plaintiffs did not agree to the entry of the order of March 2, 1978,

---

1. U.C.A.1953, Title 63, Ch. 30.

§ 63–30–13 bars claims against a political subdivision unless notice of the claim is filed within ninety days after the cause of action arises. (This statute was amended in 1978 enlarging the time to one year for filing the notice of claim).

§ 63–30–14 requires the governmental entity or its insurance carrier to notify the claimant within ninety days of its approval or denial.

§ 63–30–15 provides that if a claim is denied, a claimant may institute action in the district court within one year after denial against the governmental entity.

§ 63–30–19 requires the plaintiff who files an action against a governmental entity to file an undertaking of not less than $300.

2. Laws 1978, Ch. 27, § 12, effective March 30, 1978.

3. Now a judge of the United States District Court for Utah.

that they had orally objected thereto and had filed their notice of intent to appeal therefrom. The motion also requested dismissal of the City as a party and a ruling that being so dismissed, the City would no longer be a party to the action, and being a "non-party," the jury could not apportion fault to the City. The three third-party defendants all thereafter filed similar motions.

These motions came on for hearing before Judge Kenneth Rigtrup on July 29, 1980. Only counsel for plaintiffs and the school board appeared at that hearing. The minute entry of the court recites only that the motion was granted. Counsel for plaintiffs then presented a written order to Judge Rigtrup who signed it on July 29, 1980. It provided that the third-party complaint against Salt Lake City was dismissed with prejudice; that no negligence could be attributable to the City under § 78–27–38 [4] because it was a "non-party"; and that copies of that order need not be served on opposing counsel before being presented to the court for signature.[5] No reason for the latter ruling was set forth in the order but counsel for plaintiffs in his brief states it was included because a pretrial settlement conference was set for August 7, 1980, "only six working days away" which, stated counsel, still afforded the school board its opportunity to file an appropriate Notice of Objections to the order within the five days provided for in Rule 2.9(b). A copy of this order was hand delivered by a secretary to counsel for appellant on July 29, 1980, but whether it was delivered before or after signature by the court is not disclosed from the record. The copy so delivered contained no indication it had been signed by the court.

On July 29, 1980, counsel for appellant mailed copies of his own proposed order on Judge Rigtrup's ruling to opposing counsel

but a notation on the copy thereof filed with the court indicates it was not signed, but that another one was signed "with modifications." On July 30, 1980, counsel for appellant signed and mailed to opposing counsel a written objection to plaintiffs' "proposed order," and particularly to that part thereof stating that no negligence could be attributed to the City under § 78–27–38 as a non-party. The stated basis for that objection was that no finding to that effect had in fact been made by the court.

Also, on July 30, 1980, counsel for appellant mailed a copy of another proposed order to opposing counsel. This order was a modification of the July 29th order prepared by counsel for appellant and this second order was signed by Judge Rigtrup on August 1, 1980. It provided that the third-party complaint against the City was thereby dismissed with prejudice. Upon signing this order, Judge Rigtrup crossed out his signature on the order prepared by plaintiffs' counsel and signed by him on July 29, 1980, and wrote thereon the notation "Substituted order submitted by Nelson L. Hayes. K. R."

At a pretrial settlement conference held on August 7, 1980, Judge G. Hal Taylor continued the trial date set for a few days hence, noting in his order that an apparent conflict existed between Judge Winder's order and the order of Judge Rigtrup (which one is not shown) dismissing the City out and excluding the apportionment of negligence, with respect to which conflict counsel for appellant indicated he desired to appeal. Appellant's petition for this intermediate appeal was filed on August 27, 1980. It alleged error on the part of Judge Rigtrup in signing the order of July 29, 1980. This allegation indicates counsel for appellant was then unaware that Judge

---

**4.** § 78–27–38 is a part of the Comparative Negligence statutes enacted in 1973 and provides that the court can direct the jury to find special verdicts determining "the percentage of negligence attributable to each party."

**5.** Rule 2.9(b) of the Rules of Practice of the District and Circuit Courts provides that copies

of proposed orders shall be served on opposing counsel before being presented to the court unless the court otherwise orders. It also provides that notice of objections thereto shall be submitted to the court and counsel within five days after such service.

Rigtrup had struck his signature from the July 29 order. Grounds for the alleged error set forth in the petition may be summarized as follows:

A. By acting as an appellate judge in reversing the prior order of March 2, 1978.

B. By precluding the trier from apportioning fault between all potentially responsible parties and erroneously construing § 78–27–38, U.C.A. 1953.

C. By granting dismissal based upon appellant's alleged failure to comply with the notice and bonding provisions of the Governmental Immunity Act.

D. By dismissing the City based upon § 63–30–21 as quoted supra.

The petition incorporated by reference Judge Winder's order of March 2, 1978, and plaintiffs' Notice of Intent to appeal from that order filed April 3, 1978.

Plaintiffs thereafter filed an "Answer to and Joinder in Petition for Intermediate Appeal" wherein they denied the allegations of error set forth in appellant's petition but joined in the request for intermediate appeal because of Judge Rigtrup's second order of August 1, 1981.

Based upon these petitions this Court entered its order granting the intermediate appeal now before the Court.

The record on appeal presents to this Court issues relating to Judge Rigtrup's two orders as well as the role of the City as a third-party defendant. The issues require a consideration of the respective provisions of the state's Governmental Immunity Act [6] and the Comparative Negligence Act.[7] These legislative enactments altered the old common law principles that governmental entities could not be sued and that as between joint tort-feasors the right of contribution did not exist. From the record it appears that the rulings excluding the City from liability for contribution as made by

Judge Winder and dismissing the City from the lawsuit as made by Judge Rigtrup centered upon the provisions of § 63–30–21, quoted supra and now repealed,[8] which excluded "claims under the Governmental Immunity Act by any governmental entity." The reasoning of both judges seems to have been that the language of § 63–30–21 barred one governmental entity from seeking contribution from another governmental entity as a joint tort-feasor.

The Governmental Immunity Act, among other things, waived immunity from suit of all governmental entities for injury proximately caused by the negligent act or omission of an employee committed within the scope of his or her employment,[9] with certain exceptions as set forth therein. The word "injury" is defined as meaning "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, or estate, that would be actionable if inflicted by a private person or his agent." [10] The word "claim" as used in the Act means "any claim brought against a governmental entity or its employee for which the entity may be liable." [11] Under this Act the claim for which immunity is waived is the claim which a party injured by the negligence of a government employee acting within the scope of employment would have against the governmental employer.

The waiver is for the benefit of the party injured by the negligent act of the governmental employee. The type of claim barred by § 63–30–21 before its repeal would thus be a claim brought by one governmental entity against another governmental entity to recover for an injury caused to the former by the negligent act of the latter, as for example, where two vehicles owned by different governmental entities collide at an intersection because one ran the red light.

---

**6.** U.C.A.1953, Title 63, Ch. 30. L. 1965, Ch. 139.

**7.** U.C.A.1953, §§ 78–27–37 through 78–27–43. L.1973, Ch. 209.

**8.** See footnote 2.

**9.** U.C.A.1953, § 63–30–10.

**10.** U.C.A.1953, § 63–30–2(6).

**11.** Id.; § 63–30–2(5).

Section 78-27-39 of the Comparative Negligence laws provides that the "right of Contribution shall exist among joint tortfeasors." Section 78-27-40(3) defines "joint tort-feasors" to mean one of two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them. In this case Faddis, the school crossing guard, was an employee of Salt Lake City. Any negligence on his part in the performance of his duties would be imputed to the City, and if any negligence of appellant can be established, both governmental entities—the appellant school board and the City—would be "joint tort-feasors" under the law. As such, "the right of contribution" exists between them as a matter of law. Can this "right of contribution" be equated to the "claim" barred by § 63-30-21 of the Governmental Immunity Act? Both that Act and the Comparative Negligence statute granting that right to contribution were in effect at the time of the accident in question and at the time plaintiffs commenced their lawsuit against appellant and at the time Judge Winder made his ruling, although § 63-30-21 was repealed within a month thereof.

The right to contribution as between joint tort-feasors has extensively been before the courts. In considering that right courts appear to have rather uniformly taken the position that for the right of contribution to exist among joint tort-feasors, it is essential that both tort-feasors be liable for and subject to suit by the party injured by the joint negligent acts of each. Thus, where suit against one of the tort-feasors was barred by a guest statute, or by a parental relationship to the injured party, or under Workmen's Compensation laws, the right to contribution from such joint tort-feasors is held not to exist.[12] In the case before the Court it is clear that given negligence on the part of school board and City employees, plaintiffs would have a cause of action against each entity and the right to contribution exists as a matter of law between them as joint tort-feasors.

We hold this "right to contribution" under the Comparative Negligence laws is not to be equated to the "claim" allowed or barred under the circumstances of any given case by the Governmental Immunity Act. Appellant's third-party complaint against the City for contribution had its foundation in that "right," not in a "claim" falling within the parameters of the Governmental Immunity Act. As such, it was not barred by the then provisions of § 63-30-21.

It is apparent that what plaintiffs have attempted to do in this case is to settle with Salt Lake City and to thereafter exclude the City from any more participation in the case, and at the same time to contend that because the City is a "non-party" to the action its proportionate share of responsibility as a joint tort-feasor cannot be determined in the action. The record in the case reflects that the third-party defendants jointly settled with one minor child for $50,-500 and with the other for $130,500. Plaintiffs now sue appellant for one million dollars. The third-party defendants each obtained releases from the respective plaintiffs which preserved plaintiffs' right of action against appellant and provided that should any damages ultimately be determined to be due from appellant for injuries to either minor child, "there shall be a reduction, discharge and release of any judgment or liability to the extent of the prorata share" of the City, Faddis and Magana of the damages or judgment determined to be due from the school board, as provided by § 78-27-43(b) of the Code, which statute reads as follows:

(1) A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor unless that release:

(a) Is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued; and

(b) Provides for a reduction, to the extent of the prorata share of the released tort-feasor, of the injured person's dam-

12. *Hill v. United States,* 453 F.2d 839 (6th Cir. 1972) and Annotation in 15 A.L.R.Fed. 665.

ages recoverable against all the other tort-feasors.

(2) This section shall apply only if the issue of proportionate fault is litigated between joint tort-feasors in the same action.

The releases also contained a hold harmless provision by which each plaintiff agreed to hold each third-party defendant harmless from any judgments awarded on any and all claims for contribution in any further proceedings involving the circumstances of the case.

The releases specifically provide that the intent thereof is that the third-party defendants shall be released from all liability arising from the circumstances of the case and "shall not be liable to make contribution" to the school board. The only basis by which the plaintiffs could relieve the third-party defendants from liability for contribution would be under the express provisions of § 78–27–43, which, as noted supra, specifically states that the section shall apply *only if* the issue of proportionate fault is litigated between joint tort-feasors in the same action. One is left to wonder how the plaintiffs can claim the benefits of that statute to release the third-party defendants from liability to make contribution and at the same time seek to deny to appellant the requirement of the statute that to effect such release the proportionate fault must be litigated between the joint tort-feasors in the same action.

Under the Comparative Negligence Act liability to the injured person for the whole injury extends to each joint tort-feasor [13] regardless of the percentage of negligence attributable to each. If one tort-feasor cannot pay, the other is liable for the whole. Section 78–27–39 states that a joint tort-feasor shall not be entitled to a money judgment for contribution until he has, by payment, discharged more than his prorata share thereof. To entitle one to such a judgment does not and should not require a separate action to determine such prorata shares.

If the plaintiffs were to be successful in their efforts to exclude the City and other third-party defendants from this action, they would lose their statutory basis under § 78–27–43 for effecting the release of those third-party defendants from liability for contribution. Even under Judge Rigtrup's orders Faddis and Magana remain as third-party defendants. Only the City was dismissed out. With the City out, plaintiffs subject themselves to possible excessive liability to the City under the hold harmless provisions of the releases should a subsequent action by appellant against the City result in a finding of a high percentage of negligence on the part of the third-party defendants as against a small percentage of negligence of appellant. Conceivably, upon a substantial judgment being obtained against the school board, the City, at least, might become liable to appellant by way of contribution in excess of the settlements made, and the plaintiffs in turn liable back to the City for those excesses on the plaintiffs' hold harmless agreements in the releases.

Excluding the City could result in the school board being held liable for the total recovery allowed (less reductions required by § 78–27–42) even though, as stated, its percentage of liability, if any, might be found to be small while that of Faddis, the City's employee, be found to be large. To allow this to occur would be manifestly unjust. Although 5½ years have elapsed since the accident, this case is yet to be tried. The "right to contribution" as between joint tort-feasors not being barred by the Governmental Immunity Act, it is imperative that the issue of proportionate fault should be litigated between all joint tort-feasors in the same action and resolved by the same trier of the issues of fact.

We reverse Judge Rigtrup's ruling dismissing the third-party complaint against the City and we reinstate the school board's claim for contribution against the City excluded by Judge Winder's order of March 2, 1978. If the releases executed by plaintiffs and the provisions of § 78–27–43 afford to

13. U.C.A.1953, § 78–27–41(1). *Yost v. State of* Utah, Utah, 640 P.2d 1044, (1981).

the City an affirmative defense against the school board's claim for contribution, it should be asserted as such defense by the City, but still leaving for resolution the issue of proportionate fault among the joint tort-feasors. In so ruling we again note that although the City filed a motion to dismiss the third-party complaint in the proceedings before Judge Rigtrup, it did not appear at the hearing on that motion in the district court and did not join or participate in this appeal of that court's ruling, although it was kept fully advised of the appeals taken and the grounds set forth therein. It will not now be heard to complain.

This decision renders it unnecessary to specifically rule upon the two controversial orders signed by Judge Rigtrup. However, in view of the charge of impropriety made by counsel for plaintiffs, both in his brief and upon oral argument, against counsel for appellant, we make these observations. Judge Rigtrup, by voiding his signature on the July 29, 1980 order and signing the order of August 1, 1980, vacated the former and made the latter his ruling in the case. In any event both orders, when signed, constituted a reversal of Judge Winder's order of March 2, 1978. Section 78–7–19 of our code specifically provides that:

> If an application for an order, made to a judge of a court in which the action or proceeding is pending, is refused in whole or in part, or is granted conditionally, no subsequent application for the same order can be made to any other judge, except of a higher court; . . .

This Court has ruled that one district court judge may not overrule the ruling of another district court judge.[14] We do not consider that the use of the phrase "at this time" in Judge Winder's order left the door open for a further ruling by another judge on the issue of dismissal of the third-party complaint. Rather, it declined dismissal at that time and substituted a prayer for determination of the degree of negligence as between the joint tort-feasors involved in the lawsuit.

The impropriety alleged by counsel for plaintiffs is that appellant's counsel, ex parte and without notice to him, presented his own order to Judge Rigtrup and had the judge sign it on August 1, 1980, in complete disregard of procedures required for such action by the Rules of Civil Procedure[15] for vacating the prior order of July 29, 1980. Such action, if such be the case, cannot be condoned by the courts, although it appears that it did not bother said counsel to present his own order without notice to opposing counsel. But the record before this Court of the proceedings in the district court before Judge Rigtrup are not as clear cut as counsel would have us believe.

It is the usual practice for counsel for the winning party to prepare an appropriate and proper order and to submit it to the court. We have outlined in detail, supra, the chronology of events before Judge Rigtrup following his ruling on the motions. It is evident therefrom that on July 29, 1980, both attorneys prepared orders for Judge Rigtrup on his ruling. We note again that on July 30 counsel for appellant signed and mailed his objection to plaintiffs' "proposed order" on that ruling, noting therein that Judge Rigtrup had only dismissed the third-party complaint and had made no ruling that no negligence could be

---

14. *State v. Morgan*, Utah, 527 P.2d 225 (1974); *Peterson v. Peterson*, Utah, 530 P.2d 821 (1974); *In re Estate of Mecham*, Utah, 537 P.2d 312 (1975).

15. Rule 60(b) provides that upon motion and such terms as are just, the court may in furtherance of justice relieve a party from a final order or judgment for reasons set forth in the Rule. Rule 7(b)(1) provides that such motions shall be in writing and upon notice for a hearing thereon. Rule 6(d) fixes such time as not less than five days before the hearing unless the court otherwise orders.

It is to be noted, however, that Rule 7(b)(2) provides that "Except as specifically provided by these rules, any order made without notice to the adverse party may be vacated or modified without notice by the judge who made it, or may be vacated or modified upon notice." This may have been the basis on which Judge Rigtrup proceeded when he vacated the order of July 29, 1980, recognizing it too had been filed without notice to opposing counsel.

attributed to Salt Lake City as set forth in that "proposed order." A reasonable inference is that on July 30 counsel for appellant was not then aware that Judge Rigtrup had, on July 29, signed the order to which such objection was made.

Also, by petitioning for intermediate appeal on August 29, 1980, to review the July 29 order, it seems apparent that counsel was not even then aware that Judge Rigtrup had voided that order by striking his signature thereon, for under such circumstances there would have been no order from which to appeal. The record before us does not disclose what communication occurred between the judge and counsel for appellant that led to the latter's submission of a second order modifying his first proposed order he had himself submitted on July 29, 1980, which second order was in fact the one signed on August 1, 1980. This second modified order was prepared by appellant's counsel and mailed to opposing counsel on July 30, 1980, as was his objection to the order prepared by plaintiff's counsel and described therein as the "proposed order submitted by plaintiffs." From this we cannot say that when appellant prepared and submitted his objections and the modified order he had knowledge that plaintiff's order had in fact been signed by Judge Rigtrup. We therefore make no determination of impropriety on the part of appellant's counsel with respect thereto.

The orders appealed from are vacated and the case is remanded to the lower court for proceedings in conformity with this decision.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

HALL, C. J., having disqualified himself, does not participate herein.

CROFT, District Judge, sat.