Diane ALLEN, Plaintiff and Appellant,

v.

INTERMOUNTAIN HEALTH CARE,
INC., Defendant and Respondent.

No. 17142.

Supreme Court of Utah.

July 17, 1981.

Robert C. Fillerup, Orem, for plaintiff and appellant.

Larry White, Dan Bushnell, Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

Plaintiff appeals the dismissal of her action to recover for damages allegedly sustained because of malpractice on the part of defendant.

Plaintiff alleged the following facts. On February 23, 1976, plaintiff was treated for a broken ankle in the emergency room of Utah Valley Hospital, which is owned and operated by defendant. The ankle was wrapped and secured in a plaster cast. During a scheduled return visit to the hospital on April 12, 1976, x-rays were taken to assess whether the ankle was healing properly. Although the fracture had not mended, a doctor at the hospital ordered the cast removed and directed plaintiff to "resume progressive activity." Plaintiff contends that the premature removal of the cast and her walking on the ankle pursuant to the doctor's instructions caused the condition of her ankle to worsen and that she eventually sustained permanent and disfiguring injury.

The complaint was filed on January 16, 1980. On February 14, 1980, defendant filed a motion to dismiss the complaint based upon two provisions of the Utah Health Care Malpractice Act (hereinafter "Act"):[1] (1) Plaintiff had failed to file a notice of intent to commence action pursuant to U.C.A., 1953, 78–14–8;[2] and (2) plaintiff's claim was barred by the statute of limitations contained in U.C.A., 1953, 78–14–4.[3] Following argument, the court

---

[1] U.C.A., 1953, 78–14–1, et seq.

[2] "No malpractice action against a health care provider may be initiated unless and until the plaintiff gives the prospective defendant or his executor or successor, at least ninety days'

prior notice of intent to commence an action...."

[3] "No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or

granted defendant's motion and dismissed the complaint on May 21, 1980.

On appeal, plaintiff concedes that her action was not filed within the time prescribed by U.C.A., 1953, 78–14–4 and that she did not file a notice in accordance with U.C.A., 1953, 78–14–8. Plaintiff contends, however, that her complaint was filed within the general statute of limitations governing personal injury actions,[4] and that the aforementioned provisions of the Act are unconstitutional. Specifically, plaintiff contends that said provisions violate Article I, § 24 [5] and Article VI, § 26 [6] of the Constitution of Utah.

In *Yates v. Vernal Family Health Center*,[7] this Court explicitly held that U.C.A., 1953, 78–14–8 is not violative of either constitutional provision. In so holding, we relied upon the reasoning of *McGuire v. University of Utah Medical Center*,[8] which upheld the constitutionality of a 1979 amendment to the Act providing that the notice requirement was not applicable to causes of action arising prior to the enactment of the Act. *Yates* is therefore dispositive of the constitutional challenges to U.C.A., 1953, 78–14–8.

The challenge to U.C.A., 1953, 78–14–4 may not be disposed of so summarily. Although we have had occasion to interpret said statute,[9] it has not heretofore been subjected to direct constitutional attack.

Plaintiff contends that said section violates Article I, § 24 in that it unlawfully discriminates against persons injured by a health care provider. The claim is basically one of equal protection.[10] The narrow question presented is whether the legislature may constitutionally single out the health care profession and provide that the limitation period be shorter for claims of medical malpractice than for other types of personal injury claims.

The test to be applied in making such a determination is whether there exists a rational basis to treat health care providers differently from other alleged tortfeasors.[11] The general rule was stated in *Hansen v. Public Employees Retirement System* [12] as follows:

> As to discrimination: An act is never unconstitutional because of discrimination as long as there is some reasonable basis for differentiation between classes which is related to the purposes to be accomplished by the act. And it applies uniformly to all persons within the class. [Citations omitted.]

The avowed legislative purpose for treating the class of health providers differently from other defendants is stated in the Act itself. U.C.A., 1953, 78–14–2 provides as follows:

> The legislature finds and declares that the number of suits and claims for damages and the amount of judgments and settlements arising from health care has increased greatly in recent years. Because of these increases the insurance

patient discovers, or through the use of reasonable diligence should have discovered the injury . . ."

4.  U.C.A., 1953, 78–12–25.

5.  "All laws of a general nature shall have uniform operation."

6.  " * * * In all cases where a general law can be applicable, no special law shall be enacted. * * *"

7.  Utah, 617 P.2d 352 (1980).

8.  Utah, 603 P.2d 786 (1979).

9.  *Millett v. Clark Clinic Corp.*, Utah, 609 P.2d 934 (1980).

10. See also, Article I, § 2, Constitution of Utah, and Amendment XIV, Constitution of the United States. Plaintiff does not rely on the equal protection provisions of Amendment XIV for her expressed reason that "[w]hile a statute may be constitutional under the Fourteenth Amendment but unconstitutional under Article I, § 24, the converse apparently cannot hold true." Cf. *Baker v. Matheson*, Utah, 607 P.2d 233 (1979).

11. The so-called strict scrutiny test does not apply here inasmuch as we are not dealing with a "suspect classification." *Harrison v. Schrader*, Tenn., 569 S.W.2d 822 (1978).

12. 122 Utah 44, 246 P.2d 591 (1952). See also, *State v. Mason*, 94 Utah 501, 78 P.2d 920 (1938).

industry has substantially increased the cost of medical malpractice insurance. The effect of increased insurance premiums and increased claims is increased care cost, both through the health care providers passing the cost of premiums to the patient and through the provider's practicing defensive medicine because he views a patient as a potential adversary in a lawsuit. Further, certain health care providers are discouraged from continuing to provide services because of the high cost and possible unavailability of malpractice insurance.

In view of these recent trends and with the intention of alleviating the adverse effects which these trends are producing in the public's health care system, it is necessary to protect the public interest by enacting measures designed to encourage private insurance companies to continue to provide health-related malpractice insurance while at the same time establishing a mechanism to ensure the availability of insurance in the event that it becomes unavailable from private companies.

In enacting this act, it is the purpose of the legislature to provide a reasonable time in which actions may be commenced against health care providers while limiting that time to a specific period for which professional liability insurance premiums can be reasonably and accurately calculated; and to provide other procedural changes to expedite early evaluation and settlement of claims.

It is therefore seen that the Act was premised upon the need to protect and insure the continued availability of health care services to the public, and not (as asserted by plaintiff) to shield insurance companies from legitimate claims. The legislature exercised its discretionary prerogative [13] in determining that the shortening of the statute of limitation (along with requiring notice of intention to sue), would insure the continued availability of adequate health care services. In the absence of a showing to the contrary, we conclude that the legislature's determination is not so arbitrary or unreasonable as to exceed constitutional prohibitions.[14]

In support of her contention that the limitation statute violates Article VI, § 26, plaintiff relies upon the case of *Utah Farm Bureau Insurance Company v. Utah Insurance Guaranty Association*,[15] which defines "special laws." However, that case additionally states that the constitutional prohibition of special legislation does not preclude legislative classification, but only requires the classification to be reasonable. Hence the foregoing analysis of equal protection applies. Having concluded that the classification is reasonable, it follows that the limitation statute is not constitutionally defective as a "special law." [16]

Affirmed. No costs awarded.

STEWART and HOWE, JJ., and THORNLEY K. SWAN, Retired District Judge, concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.

OAKS, J., having disqualified himself does not participate herein; SWAN, Retired District Judge, sat.

---

13. See *Hansen v. Public Employees Retirement System, supra*, footnote 12.

14. See *Harrison v. Schrader, supra*, footnote 11; see also, *Anderson v. Wagner*, 79 Ill.2d 295, 37 Ill.Dec. 558, 402 N.E.2d 560 (1979).

15. Utah, 564 P.2d 751 (1977).

16. In accord: *State ex rel. Strykowski v. Wilkie*, 81 Wis.2d 491, 261 N.W.2d 434 (1978).