Steven L. MALAN, Plaintiff
and Appellant,

v.

James C. LEWIS and Brett Lewis,
Defendants and Respondents.

No. 17606.

Supreme Court of Utah.

May 1, 1984.

Rehearing Denied Dec. 14, 1984.

Keith E. Murray, Ogden, for plaintiff and appellant.

Wendell E. Bennett, Salt Lake City, for defendants and respondents.

STEWART, Justice:

The plaintiff, a guest passenger in an automobile owned by defendant James C. Lewis, was seriously injured when defendant Brett Lewis drove the automobile off the road and struck a guardrail. Plaintiff suffered compound fractures of his right leg, which resulted in a shortening of the leg and the necessity to wear a brace for the rest of his life.

In the trial court, the parties stipulated that Brett Lewis was negligent and that plaintiff was not. The case was submitted for decision on the issue of the constitutionality of the Utah Guest Statute by a motion for summary judgment. The trial judge sustained the constitutionality of the Statute and ruled in favor of the defendants.

On appeal, the plaintiff challenges the constitutionality of the Guest Statute under the Equal Protection Clause of the Fourteenth Amendment and the following provisions of the Utah Constitution: the Due Process Clause of Article I, § 7; the Open Courts Provision of Article I, § 11; and the Uniform Operation of the Laws Provision of Article I, § 24. Because we decide this case under Article I, § 24, we do not address the other constitutional arguments.

## I. GUEST STATUTES GENERALLY

During the late 1920s and in the 1930s, some thirty states enacted automobile guest statutes. 2 F. Harper & F. James, *The Law of Torts* § 16.15 (1956).[1] Since 1939, no state has enacted a guest statute.[2] In total, thirty-three states have or have had guest laws, either by statute or judicial decision. Twelve of the statutes have been declared unconstitutional.[3] Nine other states have repealed their guest statutes,[4] and four states have substantially limited the scope of their guest statutes.[5] Three states at one time had judicially created automobile guest laws. The cases establishing those laws have been overruled in all three states by court decisions or statute.[6] Guest statutes have been widely and strongly criticized by legal commentators over the years.[7]

1.  The first states, Connecticut and Iowa, enacted guest statutes in 1927. 1927 Conn.Pub.Acts 4404, ch. 308, § 1 (repealed 1937); Iowa Code Ann. § 321.494 (Supp.1983); Note, The Present Status of Automobile Guest Statutes, 59 Cornell L.Rev. 659, 663 & n. 26 (1974). See footnotes 3–4, *infra*, for other statutes.

2.  23 Drake L.Rev. 216, 218 n. 16, citing ABA Special Comm. on Automobile Reparations, Report 86 (1969).

3.  Cal.Veh.Code § 17158 (West 1971) declared unconstitutional in *Brown v. Merlo*, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973); Idaho Code § 49–1401 (1980) declared unconstitutional in *Thompson v. Hagan*, 96 Idaho 19, 523 P.2d 1365 (1974); Iowa Code Ann. § 321.-494 (Supp.1983) declared unconstitutional in *Bierkamp v. Rogers*, Iowa, 293 N.W.2d 577 (1980); Kan.Stat.Ann. § 8–122b (1975) declared unconstitutional in *Henry v. Bauder*, 213 Kan. 751, 518 P.2d 362 (1974); Ky.Rev.Stat.Ann. § 12–7 (Baldwin 1931) declared unconstitutional in *Ludwig v. Johnson*, 243 Ky. 533, 49 S.W.2d 347 (1932); Mich.Comp.Laws Ann. § 257.401 (1977) declared unconstitutional in *Manistee Bank & Trust Co. v. McGowan*, 394 Mich. 655, 232 N.W.2d 636 (1975); Nev.Rev.Stat. § 41.180 declared unconstitutional in *Laakonen v. Eighth Judicial Dist. Court*, 91 Nev. 506, 538 P.2d 574 (1975); N.M.Stat.Ann. § 64–24–1 (1953) declared unconstitutional in *McGeehan v. Bunch*, 88 N.M. 308, 540 P.2d 238 (1975); N.D.Cent. Code § 39–15–1 (Repl.Vol.1980) declared unconstitutional in *Johnson v. Hassett*, N.D., 217 N.W.2d 771 (1974); Ohio Rev.Code Ann. § 4515.02 (1973) declared unconstitutional in *Primes v. Tyler*, 43 Ohio App.2d 163, 335 N.E.2d 373 (1974); S.C.Code Ann. § 15–1–290 (1977) declared unconstitutional in *Ramey v. Ramey*, 273 S.C. 680, 258 S.E.2d 883 (1979); Wyo.Stat. § 31–5–1116 (1983) declared unconstitutional in *Nehring v. Russell*, Wyo., 582 P.2d 67 (1978).

4.  Ark.Stat.Ann. § 75–913 (1947) (repealed 1983); Colo.Rev.Stat. § 42–9–101 (1973) (repealed 1975); 1927 Conn.Pub.Acts ch. 308, § 1 (repealed 1937); Fla.Stat.Ann. § 320.59 (1977) (repealed 1972); Mont.Code Ann. § 32–1113 (1947) (repealed 1975); Or.Rev.Stat. § 30.115 (1953) (amended in 1979 so as to repeal automobile guest statute); S.D.Comp.Laws § 32–34–1 (1969) (repealed 1978); Vt.Stat.Ann. tit. 23, § 1491 (1978) (repealed 1969); Wash.Rev.Code § 46–08.080 (1970) (repealed 1974).

5.  Illinois' guest statute applies only to hitchhikers, Ill.Ann.Stat. ch. 95½, § 10–201 (Smith-Hurd 1971); Massachusetts' and Virginia's guest statutes allow a guest to recover for the host's ordinary negligence, Mass.Gen.Laws Ann. ch. 231, § 85L (West Supp.1983); Va.Code § 8–01–63 (1977); Texas' guest statute applies only to guests who are in the second degree of consanguinity or affinity to the host, Tex.Rev.Civ.Stat. Ann. art. 6701b (Vernon 1977).

6.  In *Grimes v. Roe*, 242 Ga. 669, 251 S.E.2d 266 (1978), the Georgia Supreme Court upheld Georgia's guest statute. However, Georgia superseded the guest law by statute. O.C.G.A. § 51–1–36 (formerly Ga.Code.Ann. § 105–104.1 (Supp. 1982)); *Rider v. Taylor*, 166 Ga.App. 474, 304 S.E.2d 557 (1983). New Jersey and Wisconsin have overruled their court-created guest laws. *Cohen v. Kaminetsky*, 36 N.J. 276, 176 A.2d 483 (1961); *McConville v. State Farm Mutual Automobile Ins. Co.*, 15 Wis.2d 374, 113 N.W.2d 14 (1962).

7.  *E.g.*, W. Prosser, The Law of Torts § 60 at 382–85 (4th ed. 1971); Lasher, Hard Laws Make Bad Cases—Lots of Them (California Guest Statute), 9 Santa Clara L.Rev. 1 (1968); Note, Non-Liability of Owner or Driver of Automobile for Negligent Injury to Guest, 14 Iowa L.Rev. 243 (1929); Note, The Liability of an Automobile

In sum, twenty-four of the original guest laws have been repealed, declared unconstitutional, or overruled, and four have been substantially modified. At the present time, only five states have guest statutes that have not been substantially limited.[8] Utah is one of the five remaining states with an unmodified guest statute. The Utah Act was adopted verbatim from the California Guest Statute in 1935.

The Utah Guest Statute, U.C.A., 1953, § 41-9-1 *et seq.*,[9] bars a nonpaying passenger who is injured in an automobile accident, or the passenger's heirs if the passenger is killed, from suing the owner or driver of the automobile for ordinary negligence if the injury occurs on a public highway. A passenger, or his heirs if he is killed, may recover damages only if injury is the result of intoxication or willful misconduct by the driver or owner or if the guest pays compensation for the ride. Thus, a child who is given a lift home from school and injured because of the driver's negligence, although the law requires the driver to carry public liability insurance, is barred from recovering any damages, even though the child is maimed for life and his family is rendered destitute by medical expenses. Similarly, a passenger, who is a fellow worker at the same business establishment as the driver, may recover for injuries caused by the ordinary negligence of

the driver if the passenger hands the driver a couple of dollars, while another passenger in the same car and injured in the same accident is barred if he paid nothing for the ride.

Dean Prosser, commenting on the effect of guest statutes, has stated:

> The typical guest act case is that of the driver who offers his friend a lift to the office or invites him out to dinner, negligently drives him into a collision, and fractures his skull—after which the driver and his insurance company take refuge in the statute, step out of the picture, and leave the guest to bear his own loss. If this is good sound policy, it at least appears under a novel front.

W. Prosser, *The Law of Torts* § 34 at 187 (4th ed. 1971). The Michigan Supreme Court made a somewhat similar point in *Stevens v. Stevens*, 355 Mich. 363, 370-71, 94 N.W.2d 858, 862 (1959), when it stated:

> The friends of the driver, his family ... must suffer injury at his hands without recompense, solaced only by the thought that, after all, the skull was cracked by a friendly hand.... Why? Because the relationship between them was one of trust and friendship. No money had changed hands. If, however, not the neighbor himself is carried to town, but rather his livestock to the slaughter-

Driver to a Non-paying Passenger, 20 Va.L.Rev. 326 (1934); Note, Liability Under Automobile Guest Statutes, 1 Wyo.L.J. 182 (1947).

8.  Ala.Code § 32-1-2 (1975); Del.Code Ann. tit. 21, § 6101 (revised ed. 1974); Ind.Code Ann. § 9-3-3-1 (Burns Repl.Vol. 1980); Neb.Rev. Stat. § 39-6,191 (1978); U.C.A., 1953, § 41-9-1.

9.  Section 41-9-1 states in full text:

Any person who as a guest accepts a ride in any vehicle, moving upon any of the public highways of the state of Utah, and while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. In the event that such person while so riding as such guest, is killed, or dies as a result of injury sustained while so riding as such guest, then neither the estate nor the legal representatives or heirs of such guest shall have any right of recovery against the driver or owner of said vehicle by reason of the death of said guest. If such

person so riding as a guest be a minor and sustain an injury or be killed or die as a result of injury sustained while so riding as such guest, then neither the parents nor guardians nor the estate nor legal representatives or heirs of such minor shall have any right of recovery against the driver or owner or person responsible for the operation of said vehicle for injury sustained or as a result of the death of such minor. Nothing in this section shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death of such guest proximately resulting from the intoxication or willful misconduct of such owner, driver or person responsible for the operation of such vehicle; provided, that in any action for death or for injury or damage to person or property by or on behalf of a guest or the estate, heirs or legal representatives of such guest, the burden shall be upon plaintiff to establish that such intoxication or willful misconduct was the proximate cause of such death or injury or damage.

house, many modern courts will permit full recovery for injury to the unfortunate animal through failure to use reasonable care for its safety. Is this one answer of an enlightened people to the hallowed question: "How much then is a man better than a sheep?"

Since the 1930s, no state has adopted a guest statute. Rather, the frightful carnage and the high cost of personal and property damages produced by the rapid increase in automobile travel have caused state legislatures to provide various means of compensation to ameliorate the great personal and social losses. As the Iowa Supreme Court stated in *Bierkamp v. Rogers*, Iowa, 293 N.W.2d 577, 582 (1980): "[T]he fact that guest statutes have seen no expansion since 1939 is supportive of the conclusion that changed circumstances have mitigated, if not eliminated, the factors which supported or justified enactment of the statutes."

## II. RELATED LAWS AND EXCEPTIONS TO THE GUEST STATUTE

The policy of barring guests from suing host drivers has numerous exceptions. Since enactment of the Utah Guest Statute, the Legislature has acted in several areas of the law to provide effective remedies for persons, including automobile guests, who are victimized by negligent drivers. The effect of the legislative efforts has been to enlarge the number of nonpaying automobile guests who may recover for injuries caused by a host driver. In addition, the Guest Statute itself has a number of exceptions that allow guests to sue drivers for simple negligence. There is also a Utah constitutional provision, although it has never been specifically litigated in this state, that appears to conflict directly with the Guest Statute rule that heirs of a nonpaying guest killed in an automobile accident may not sue the driver for negligently causing that death. The original scope of the Guest Statute has been substantially narrowed, and its application to any particular guest is both problematic and irrational.

1. The Motor Vehicle Safety Responsibility Act, U.C.A., 1953, § 41–12–1 *et seq.*, was enacted in 1951. That Act provides that an automobile driver who does not carry public liability insurance and is in an accident that causes bodily injury, death, or property damage in excess of $400 must post security in an amount specified by the Department of Public Safety or lose the right to drive. § 41–12–5(a) and (d). Although a financially irresponsible driver is not barred from driving until he has had an accident, the effect of the Act, together with the general tort law liability for acts of negligence, induced most automobile owners to acquire public liability insurance. That Act, however, made no change either in the Guest Statute or in the general tort law with respect to compensation for damages suffered by an automobile accident victim.

2. The No-Fault Insurance Act, § 31–41–1 *et seq.*, was enacted in 1973. The legislative purpose was to provide a remedy for the "greater bulk of the personal injury claims that arise out of automobile accidents." § 31–41–2. The Act adopted an approach entirely different from that of the Motor Vehicle Safety Responsibility Act. It provided a limited remedy for all persons injured in an automobile accident and thereby significantly modified the rights and remedies of victims of automobile accidents, including automobile guests. In doing so, it impliedly supersedes a significant part of the Guest Statute.

The No-Fault Act requires every owner of an automobile to purchase a no-fault insurance policy as a condition of registering his automobile. The Act requires the insurance policy to insure against most personal injury special damages, but not pain and suffering. The personal injury protection (i.e., "PIP") benefits include, within specified limits, medical benefits, loss of income, disability benefits, funeral bene-

fits, and survivor benefits. § 31–41–6(1)(a)–(d).[10]

These benefits are payable, irrespective of the fault of the driver, to *any* "person while occupying the described motor vehicle with the consent of the insured." § 31–41–7(b). The term "person" is defined by § 31–41–3(2) to mean "every natural person" and therefore includes all guest passengers, whether they paid for the ride or not. Thus, automobile guests are provided a remedy for relatively minor injuries by virtue of the No-Fault Act, but are cut off from any remedy for serious injuries that are greater than the limits established by the No-Fault Act, even though the host driver carries public liability insurance and was negligent or even grossly negligent.

Sections 31–41–4 and 31–41–5 of the No-Fault Act also evidence a legislative intent to provide broader, more effective remedies for automobile accident victims. They require every owner of an automobile either to purchase public liability insurance or to provide equivalent security that qualifies under the Safety Responsibility Act. *Allstate Insurance Co. v. United States Fidelity & Guaranty Co.*, Utah, 619 P.2d 329 (1980). Thus, the No-Fault Act repeals by implication that part of the Safety Responsibility Act that permits a person to drive without having public liability insurance until he has had an accident. The combined effect of the No-Fault Act and the Safety Responsibility Act is to require all owners of Utah-registered automobiles to carry public liability insurance.

The No-Fault Act also provides an automobile guest a direct right of action against the owner of an automobile if a no-fault policy is not purchased. Section 31–41–9(2) states that the motor vehicle owner who fails to have security in effect at the time of an accident *"shall have no immunity from tort liability and shall be personally liable for the payment of the benefits provided for under Section 31–41–6."* (Emphasis added.)

3. The Comparative Negligence Act, U.C.A., 1953, §§ 78–27–37 to –43 was also enacted in 1973. Although not yet authoritatively construed on this point, the Act may nullify a part of the immunity afforded a driver under the Guest Statute in those cases in which a guest is injured in a collision between the host's car and a second car. The Comparative Negligence Act does not address directly a host driver's liability to a guest, but the Act clearly affects the jural rights of guests and drivers. The Act provides for the apportionment of fault and liability among joint tortfeasors and establishes a right of contribution among joint tortfeasors according to their respective degrees of fault. § 78–27–39. *See generally Jensen v. Intermountain Health Care, Inc.*, Utah, 679 P.2d 903 (1984).

The potential effect of the Act on the rights and liabilities of automobile guests and drivers is illustrated by *Bishop v. Nielsen*, Utah, 632 P.2d 864 (1981). In *Bishop*, the plaintiff sued for property damage to his car when it was involved in a collision while his daughter was driving it. The defendant sought to implead the daughter for the purpose of establishing the defendant's right of contribution against her, even though the doctrine of parent-child immunity would have precluded a direct action against the daughter by the father. Declining to rule on the question of whether the law recognizes a parent-child tort immunity in this jurisdiction, the Court assumed that the doctrine was the law of the state and, notwithstanding, held that the defendant had a right of contribution against the daughter under the comparative negligence statute.

If this holding were applied to automobile guests, a guest injured in a collision in which both the host driver and the driver of the second car are at fault could sue the nonhost driver, who in turn would have an action for contribution against the host

---

**10.** Section 31–41–6 (as amended) provides for minimum personal injury protection in the following amounts: reasonable medical expenses up to $2,000; disability benefits in the amount of 85 percent of loss of gross income, up to $150 per week for a maximum of fifty-two weeks; funeral benefits not to exceed $1,000; and survivors' benefits of $2,000.

driver for contribution based on the driver's share of the negligence. Thus, a guest would in effect be able to recover indirectly from the host driver for negligently caused injury, even though a direct suit would be barred by the Guest Statute. § 78–27–41.

If, however, *Bishop v. Nielsen* were not followed and the Guest Statute immunity were held to override a joint tortfeasor's right of contribution, the policy of the Comparative Negligence Act to spread liability among joint tortfeasors according to their fault would be defeated. In such a case, the driver of the second car would be wholly liable for the guest's damages, except perhaps for the no-fault portion, including that portion attributable to the host driver, even if the host driver's negligence were greater than the negligence of the driver of the second car. *See* § 78–27–41. *See generally Madsen v. Salt Lake City School Board*, Utah, 645 P.2d 658 (1982). Under either alternative, the guest is fully protected by negligence law and is able to recover if he is injured in a collision between his host's car and a second car, if the driver of the second car is at all negligent.

4. Article XVI, § 5 of the Utah Constitution constitutes a still further exception to the Guest Statute.[11] That provision prohibits the Legislature from abrogating the right of action for wrongful death:

> The right of action to recover damages for injuries resulting in death, shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation, except in cases where compensation for injuries resulting in death is provided for by law.

The plain language of Article XVI, § 5 seems to compel the conclusion that the Guest Statute is unconstitutional insofar as it purports to bar the heirs of a guest killed as a result of a driver's negligence from bringing a wrongful death action against the host driver. The constitutional provision was directed at preventing the Legislature from abolishing a right of action for

wrongful death, whether in a wholesale or piecemeal fashion. *See generally Oliveras v. Caribou-Four Corners, Inc.*, Utah, 598 P.2d 1320 (1979); *Garfield Smelting v. Industrial Commission*, 53 Utah 133, 178 P. 57 (1918).

The supreme court of Kentucky held unconstitutional that state's guest statute in a wrongful death case under a constitutional provision identical to Utah's. The court stated:

> The "guest statute" under consideration undertakes to take away the right to recover for death resulting from negligence, or wrongful act amounting to anything less than an intentional act, and to that extent it clearly contravenes section 241 of the Constitution. In *Howard's Adm'r v. Hunter*, 126 Ky. 685, 104 S.W. 723, 724, 31 Ky.Law Rep. 1092, the court, speaking of this section of the Constitution, said: "It was the manifest intention of the constitutional provision quoted to allow an action to be maintained whenever the death of a person was caused by the negligent or wrongful act of another and it is not within the power of the Legislature to deny this right of action. The section is as comprehensive as language can make it. The words 'negligence' and 'wrongful act' are sufficiently broad to embrace every degree of tort that can be committed against the person."

*Ludwig v. Johnson*, 243 Ky. 533, 536–37, 49 S.W.2d 347, 349 (1932).

5. In 1981, the Legislature enacted the Ridesharing Act, U.C.A., 1953, § 54–11–1 *et seq.* (Supp.1983), based in part on the finding that "[s]ingle occupant driving is the predominant mode of transportation used by commuters in Utah." § 54–11–1(b). The Act requires the operator of a vanpool to carry insurance in the amount of $100,000 for injury to or death of one person and not less than $300,000 for injuries to or death of more than one person. § 54–6–12(2) (Supp.1983). Carpool drivers are required to maintain the insurance cov-

---

**11.** The Guest Statute has been applied in a wrongful death case, but its constitutionality as

applied was not raised. *Smith v. Franklin*, 14 Utah 2d 16, 376 P.2d 541 (1962).

erage limits required of other automobiles, but it is clearly contemplated that passengers in both vanpools and carpools are entitled to the ordinary tort remedies for injuries suffered as a result of the negligence of the driver.

6. The Guest Statute itself also establishes several additional exceptions that allow nonpaying guests to sue a driver for simple negligence. A guest is not barred if he (a) is injured because of a host driver's intoxication, § 41–9–1; (b) is injured while riding in a vehicle on private land, although a temporary diversion off a public highway onto private land does not lift the bar, *see Andrus v. Allred,* 17 Utah 2d 106, 404 P.2d 972 (1965); (c) does not have the legal capacity to "accept" a ride, *Thomas v. Union Pacific Railroad Co.,* Utah, 548 P.2d 621 (1976); (d) participates in a joint enterprise with the driver, *Mukasey v. Aaron,* 20 Utah 2d 383, 438 P.2d 702 (1968); or (e) pays his full share of the cost of a ride, as long as social considerations do not constitute the principle motivation for giving the ride. *Critchley v. Vance,* Utah, 575 P.2d 187 (1978); *Smith v. Franklin,* 14 Utah 2d 16, 376 P.2d 541 (1962); *Greenhalgh v. Green,* 16 Utah 2d 221, 398 P.2d 691 (1965). *Cf. Goff v. Goff,* Utah, 535 P.2d 681 (1975).

■ In sum, the law in Utah is that guests who suffer minor injuries in an automobile accident are entitled to recover, while those guests who suffer the serious injuries must bear the full burden themselves, except for PIP payments, even though the host driver is required by law to carry public liability insurance. But if the seriousness of the injury leads to the guest's death, his heirs are apparently entitled to full recovery. Furthermore, persons who pay for their rides in an attempt to comply with the condition of the Guest Statute may not have protection if they are family members or social guests, while those who are not family members or social guests may have a right of action, depending on whether the court considers the payment sufficient. *Compare Smith v. Franklin,* 14 Utah 2d 16, 376 P.2d 541 (1962), *with Goff v. Goff,* Utah, 535 P.2d 681 (1975). In addition, a guest may recover in a two-car accident if both drivers are negligent, and the host driver may still have to pay for his share of the fault under the Comparative Negligence Act.

## III. PRIOR ADJUDICATIONS

We sustained the constitutionality of the Utah Guest Statute in *Cannon v. Oviatt,* Utah, 520 P.2d 883 (1974).[12] But a ruling that a statute is constitutional does not thereafter become immune from reconsideration when other laws have been enacted or new factual circumstances arise that alter the premises upon which the chal-

---

**12.** The only Utah case to undertake an analysis of the Utah Guest Statute under equal protection principles was *Cannon v. Oviatt,* Utah, 520 P.2d 883 (1974). The Court focused primarily on, and rejected, the equal protection analysis made by the California Supreme Court in *Brown v. Merlo,* 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973), which held California's Guest Statute—from which the Utah Guest Statute was adopted—unconstitutional. The California equal protection analysis proceeded in part on the proposition that a guest in an automobile should not be treated differently from other guests, as to whom common law distinctions had been abolished. Since those distinctions have not been abolished in this state, the Court found the analysis unconvincing. The courts of other states that have not abolished those distinctions have found them of no consequence in holding their guest statutes unconstitutional. *E.g., Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974); *Bierkamp v. Rogers,* Iowa, 293 N.W.2d 577 (1980).

*Thomas v. Union Pacific R.R. Co.,* Utah, 548 P.2d 621 (1976), and *Critchley v. Vance,* Utah, 575 P.2d 187 (1978), reiterated the constitutionality of the Statute, but simply cited *Cannon* in rejecting the equal protection claims made in those cases. Neither case made any independent analysis of the constitutional claims. *Critchley* rejected the contention that the No-Fault Act impliedly repealed the Guest Statute. *Thomas* did nothing more than rely upon the authority of *Cannon v. Oviatt, supra. Cannon* made only the briefest mention of the No-Fault Insurance Act without making an analysis of the effect of that Act on the constitutionality of the Guest Statute under the equal protection laws.

None of these cases considered the effect of the wrongful death provision of the Utah Constitution, Article XVI, § 5, the full effect of the No-Fault Act, or the cumulative effects of these provisions and other statutes on the rationality and constitutionality of the discriminations created.

lenged statute was based. *Milnot Co. v. Richardson,* 350 F.Supp. 221 (S.D.Ill.1972).

We recognized that principle in *Stone v. Department of Registration,* Utah, 567 P.2d 1115, 1117 (1977), in stating, "[E]ven though a statute may be adjudged to be constitutional at one time, it is possible that times and conditions may change so that it might be adjudged to be unconstitutional...." The rule is of particular importance in cases involving principles of equal protection of the laws since the constitutionality of a statute under equal protection analysis depends so much on the legal and factual conditions that existed when the statute was enacted. *Milnot Co. v. Richardson, supra.*

▮ The constitutionality of the New Mexico guest statute had been sustained three times before *McGeehan v. Bunch,* 88 N.M. 308, 540 P.2d 238 (1975), held it unconstitutional. The court observed that "[a] classification that may once have had a fair and substantial relation to the objectives of this statute because of a then existing factual setting, may lose its relationship due to altered circumstances." *Id.,* 540 P.2d at 242. Likewise, the Kansas Supreme Court sustained the constitutionality of its guest statute three times before holding it unconstitutional in *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362 (1974). Other courts have applied the same principles. *Brown v. Merlo,* 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973); *Bierkamp v. Rogers,* Iowa, 293 N.W.2d 577 (1980); *Johnson v. Hassett,* N.D., 217 N.W.2d 771 (1974); *Primes v. Tyler,* 43 Ohio App.2d 163, 335 N.E.2d 373 (1974); *Laakonen v. Eighth Judicial District Court,* 91 Nev. 506, 538 P.2d 574 (1975). *Cf. Chastleton Corp. v. Sinclair,* 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841 (1924). Re-

consideration is particularly appropriate when the intended effect of a statute has been severely limited by subsequent legislative enactments, as in the instant case.

Reconsideration does not permit, however, the substitution of our concept of sound policy for that of the Legislature. That is not the prerogative of the judiciary; our standards for judgment are established by the constitution. However, now that the issue is again before us, "[i]t is our constitutional obligation to determine whether the classifications drawn" are in violation of Article I, § 24 of the Utah Constitution. *Bierkamp v. Rogers,* Iowa, 293 N.W.2d 577, 581 (1980). The issue is whether the Legislature, by stripping some nonpaying automobile guests of the right to sue a host driver for negligently inflicted injuries, while allowing other automobile guests and all other persons injured by the negligence of an automobile driver, has violated the equal protection provisions of the Utah Constitution.

## IV. UTAH EQUAL PROTECTION OF THE LAWS

### A.

▮ Article I, § 24 of the Utah Constitution states: "All laws of a general nature shall have uniform operation." The Fourteenth Amendment of the United States Constitution prohibits the states from enacting laws that deny "any person within its jurisdiction equal protection of the laws." Although their language is dissimilar, these provisions embody the same general principle: persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same.[13] *E.g., Baker v. Matheson,* Utah, 607 P.2d 233 (1979); *McLaughlin v. Flori-*

---

**13.** Occasionally, we have referred to either Article I, § 24 or Article I, § 2, or both, as the constitutional source of state equal protection principles. *E.g., Allen v. Intermountain Health Care, Inc.,* Utah, 635 P.2d 30 (1981); *Redwood Gym v. Salt Lake County Comm'n,* Utah, 624 P.2d 1138 (1981). Article I, § 2 uses the language "equal protection," but, although it is relevant to the construction of Article I, § 24, it is

more a statement of a purpose of government than a legal standard that can be used to measure the legality of governmental action. In *Liedtke v. Schettler,* Utah, 649 P.2d 80 (1982), we stated that Article I, § 24 is "generally considered the equivalent of the Equal Protection Clause of the 14th Amendment, U.S. Constitution." *Liedtke, supra,* 649 P.2d at 81 n. 1.

*da,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *State Tax Commission v. Department of Finance,* Utah, 576 P.2d 1297 (1978).

Basic principles of equal protection of the law are inherent in the very concept of justice and are a necessary attribute of a just society. They are explicitly stated to be essential to a free society in Article I, § 2 of the Utah Constitution: "[A]ll free governments are founded on their authority for [the people's] equal protection and benefit...." Justice Robert Jackson explained:

> This equality is not merely abstract justice. The framers of the Constitution knew, and we should not forget today, that there is no more effective practical guarantee against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally.

*Railway Express Agency Inc. v. New York,* 336 U.S. 106, 112, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949) (concurring opinion of Jackson, J.). If the precept of equal protection of the laws is not honored, arbitrariness and oppression will prevail. "Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation." *Id.,* 336 U.S. at 113, 69 S.Ct. at 467.

■ Although Article I, § 24 of the Utah Constitution incorporates the same general fundamental principles as are incorporated in the Equal Protection Clause, our construction and application of Article I, § 24 are not controlled by the federal courts' construction and application of the Equal Protection Clause. Case law developed under the Fourteenth Amendment may be persuasive in applying Article I, § 24, *e.g., Baker v. Matheson,* Utah, 607 P.2d 233, 243 n. 4 (1979), but that law is not binding so long as we do not reach a result that violates the Equal Protection Clause. *Bierkamp v. Rogers,* Iowa, 293 N.W.2d 577, 579 (1980); *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825, 831 (1980); *Nehring v. Russell,* Wyo., 582 P.2d 67, 76 (1978).

The different language of Article I, § 24, the different constitutional contexts of the two provisions, and different jurisprudential considerations may lead to a different result in applying equal protection principles under Article I, § 24 than might be reached under federal law.

**B.**

■ Whether a statute meets equal protection standards depends in the first instance upon the objectives of the statute and whether the classifications established provide a reasonable basis for promoting those objectives. Courts and commentators alike have presumed that the legislative purposes in enacting guest statutes were twofold: first, to promote hospitality by protecting a driver from a lawsuit by an ungrateful, injured guest passenger and, second, to prevent collusion between a driver and his guest who is a family member or friend. *E.g., Cannon v. Oviatt,* Utah, 520 P.2d 883 (1974); *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974); 2 F. Harper & F. James, *The Law of Torts* § 16.15 at 961 (1956).

**C.**

■ Article I, § 24 protects against two types of discrimination. First, a law must apply equally to all persons within a class. *State Tax Commission v. Department of Finance,* Utah, 576 P.2d 1297 (1978); *Dodge Town Inc. v. Romney,* 25 Utah 2d 267, 480 P.2d 461 (1971); *Broadbent v. Gibson,* 105 Utah 53, 140 P.2d 939 (1943). Second, the statutory classifications and the different treatment given the classes must be based on differences that have a reasonable tendency to further the objectives of the statute. *Liedtke v. Schettler,* Utah, 649 P.2d 80 (1982); *Allen v. Intermountain Health Care, Inc.,* Utah, 635 P.2d 30 (1981); *Carter v. State Tax Commission,* 98 Utah 96, 96 P.2d 727 (1939). *See also Redwood Gym v. Salt Lake County Commission,* Utah, 624 P.2d 1138 (1981); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Goesaert v. Clearly,* 335 U.S. 464, 69 S.Ct. 198, 93

L.Ed. 163 (1948). If the relationship of the classification to the statutory objectives is unreasonable or fanciful, the discrimination is unreasonable. *Slater v. Salt Lake City*, 115 Utah 476, 494, 206 P.2d 153 (1949).

1. On a number of occasions, we have held a statute unconstitutional because it did not operate uniformly on the members of a class. In *State Tax Commission v. Department of Finance*, Utah, 576 P.2d 1297 (1978), the Court held a statute unconstitutional because it singled out the state insurance fund from all insurance companies that were found to be within the same class to pay a special tax. The Court stated: "Equal protection protects against discrimination within a class. The legislature has considerable discretion in the designation of classifications but the court must determine whether such classifications operate equally on all persons similarly situated." *Id.* at 1298.

When persons are similarly situated, it is unconstitutional to single out one person or group of persons from among a larger class on the basis of a tenuous justification that has little or no merit.[14] *Dodge Town Inc. v. Romney*, 25 Utah 2d 267, 480 P.2d 461 (1971), held unconstitutional a Sunday closing law that required only licensed automobile dealers to close and permitted other businesses to transact business on Sunday because the discrimination failed to further the legislative purpose of preventing fraud and auto thefts. *See also Justice v. Standard Gilsonite Co.*, 12 Utah 2d 357, 366 P.2d 974 (1961); *Carter v. State Tax Commission*, 98 Utah 96, 96 P.2d 727 (1939). *Cf. Leetham v. McGinn*, Utah, 524 P.2d 323 (1974).

Laws that have so many exceptions that "they in effect change the nature of the act" and result in only a small number of persons being subject to the act are also invalid under the Uniform Operation of the Laws provision. *Broadbent v. Gib-son*, 105 Utah 53, 69, 140 P.2d 939, 946 (1943). In *Broadbent*, this Court held unconstitutional what purported to be a general Sunday closing law because the statute had so many exceptions to the general rule that the statute actually constituted "a grant of a special privilege to the excepted classes" without a legal excuse for not granting the same privilege to others. *See also Skaggs Drug Centers, Inc. v. Ashley*, 26 Utah 2d 38, 484 P.2d 723 (1971), where the Court noted that the large number of exceptions to the statute in question cast substantial doubt on what the Legislature actually intended.

In *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), the United States Supreme Court held a state statute unconstitutional as a violation of the Equal Protection Clause because the statute was so "riddled with exceptions" that the asserted purpose of the statute could not "reasonably be regarded as its aim." *Id.*, 405 U.S. at 449, 92 S.Ct. at 1036. On essentially the same reasoning, the Kansas Supreme Court in *Henry v. Bauder*, 213 Kan. 751, 756, 518 P.2d 362, 367 (1974), held an automobile guest statute similar to Utah's unconstitutional because it resulted in "a crazy-quilt pattern of application ... which permits recovery in many factual situations and denies recovery in others ... [thereby denying] equal justice to persons similarly situated."

The constitutionality of the Guest Statute must be judged not only in light of the reasonableness of the classification created by that statute, but also in light of exceptions to those classifications created by other statutes. *See Gregg Dyeing Co. v. Query*, 286 U.S. 472, 480, 52 S.Ct. 631, 634, 76 L.Ed. 1232 (1932); *Hayes v. Superior Court*, 6 Cal.3d 216, 98 Cal.Rptr. 449, 490 P.2d 1137 (1971).

The Guest Statute purports to deprive all nonpaying automobile guests who accept a

---

14. Although we presume the Legislature acted on a reasonable basis, that presumption does not require us to accept any conceivable reason for the legislation. Such a rule would invite the corrosion of constitutional guarantees. *See* *Brown v. Merlo*, 8 Cal.3d 855, 106 Cal.Rptr. 388, 395 n. 7, 506 P.2d 212, 219 n. 7 (1973). Rather, we judge such enactments on the basis of reasonable or actual legislative purposes.

ride from asserting a negligence action against a host driver if the ride is on a public highway. The No-Fault Act, however, permits an automobile guest who sustains a comparatively small or moderate injury to be fully compensated. But a guest who is seriously maimed or crippled and is disabled from working for life and suffers life-long medical expenses may recover only the very limited PIP payments allowed by that Act, even though other passengers in the same automobile may be allowed to sue in negligence and recover their total damages if they fall within one of several different exceptions. If the guest is killed, his heirs may have a cause of·action in negligence under the Constitution for the full measure of damages suffered. Thus, if a guest is not seriously injured or is killed, the law provides full compensation, but if the guest is seriously injured, he has no legal claim for full damages. He is entitled only to the limited benefits allowed by the No-Fault Act for nonserious injuries.

■ A guest who pays an agreed-upon price for a ride but has another reason for traveling with the driver, such as a social motivation, is barred from suing the driver, while a guest who is given ride solely for the compensation paid may sue the driver for negligence and recover all his damages.[15]

If the host driver's negligence makes him a joint tortfeasor with the driver of a second car, a guest in the host driver's car may sue the driver of the second car for the full amount of his injuries, including that portion attributable to the host driver's negligence, irrespective of whether the driver of the second car may sue the host driver for contribution. Thus, only when a guest is injured in a one-car accident or when the driver of the second car in a collision is wholly fault-free is a guest completely barred from suing the host driver for negligence. A guest passenger who is seriously injured in a vanpool or carpool may sue for the full amount of his damages, regardless of whether another vehicle is involved in the accident.

■ In sum, the Guest Statute is so shot-through with exceptions as to be incapable of reasonably furthering the statutory objectives. Furthermore, we find the conclusion unavoidable that the numerous exceptions to the Guest Statute create a statutory policy that discriminates unreasonably and invidiously among guests who are subject to the bar of the Guest Statute. The "crazy-quilt," irrational policy created by the Guest Statute and other statutes does not reflect a uniform operation of the laws under Article I, § 24.

2. Equal protection of the law, both state and federal, "requires more of a state law than nondiscriminatory application within the class it establishes."[16] *Rinaldi v. Yeager*, 384 U.S. 305, 309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966); *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). The classification must rest upon some difference which " 'bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis .... [A]rbitrary selection can never be justified by calling it classification.' " *Id.*, 379 U.S. at 190, 85 S.Ct. at 287, *quoting Gulf, Colorado, & Santa Fe Railway v. Ellis*, 165 U.S. 150, 159, 17 S.Ct. 255, 258, 41 L.Ed. 666

---

**15.** There is no principle in the law that the duty to exercise reasonable care toward the safety of others should depend on payment. That duty is required of all; it is essential to the physical security and safety of all persons in a civilized society. *See* Annots., 61 A.L.R. 1252 (1929); 51 A.L.R. 581 (1927); 47 A.L.R. 327 (1927); 40 A.L.R. 1338 (1926); 26 A.L.R. 1425 (1923); 20 A.L.R. 1014 (1922).

**16.** We do not deal here with problems of overinclusiveness or underinclusiveness, which present somewhat different problems, at least in areas requiring strict scrutiny. *See generally* L. Tribe, American Constitutional Law, ch. 16 (1978). As to general social or economic legislation, the Legislature must be able to make reasonable distinctions that follow no "razor-thin distinctions." *Baker v. Matheson*, Utah, 607 P.2d 233, 243 (1979). In the instant case, however, the statutory classification relates to a precisely defined and ascertainable group of persons.

(1897); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). "The Courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose ...." *McLaughlin v. Florida, supra*, 379 U.S. at 191, 85 S.Ct. at 288. The law under Article I, § 24 is not different. *E.g., Liedtke v. Schettler*, Utah, 649 P.2d 80 (1982); *Continental Bank & Trust Co. v. Farmington City*, Utah, 599 P.2d 1242 (1979); *Slater v. Salt Lake City*, 115 Utah 476, 206 P.2d 153 (1949).

█ If the Guest Statute tends to promote hospitality, the tendency is "obscure" and "more fanciful than real." *Slater v. Salt Lake City, supra*, 115 Utah at 494, 206 P.2d at 163. A driver owes a duty of due care to all other persons on the highway. He has no defense in the Guest Statute for injuries negligently caused to pedestrians or the occupants of other automobiles. A driver must expect to be held to the reasonable person standard of due care, irrespective of the Guest Statute. Therefore, relieving a driver of the duty to exercise due care only toward guests provides little, if any, inducement to offer a ride to guests.

Furthermore, most drivers know nothing about the Guest Statute. Their hospitality in offering a ride is based on considerations that have nothing to do with the existence of the Guest Statute. Even if the Guest Statute encouraged drivers to offer rides, it would also discourage guests from accepting rides. In *Manistee Bank & Trust Co. v. McGowan*, 394 Mich. 655, 676, 232 N.W.2d 636, 644–45 (1975), the Michigan Supreme Court observed:

In point of fact, the presence or absence of a guest statute does not affect the decision of friends and relatives to ride together in an automobile. Drivers may hesitate to pick up hitchhikers, but not because of potential liability for negligence, ordinary or gross. Friends and relatives offer, seek, accept, or decline rides with each other for reasons quite apart from the ability to recover for negligently inflicted injury, death or loss. It

is only after the fortuitous event of an accident that the existence of the statute becomes known to most people. The absence of a guest passenger statute would not chill hospitality or group transportation any more or less than its existence promotes such activity.

*Bierkamp v. Rogers*, Iowa, 293 N.W.2d 577, 582 (1980), relied on the same reasoning and held: "No matter how laudable the State's interest in promoting hospitality, it is irrational to reward generosity by allowing the host to abandon ordinary care and by denying to nonpaying guests the common law remedy for negligently inflicted injury." *Quoting McGeehan v. Bunch*, 88 N.M. 308, 311, 540 P.2d 238, 241 (1975). Realistically, the hospitality rationale is so attenuated that it cannot justify denying a nonpaying guest the right to sue a host driver for negligently inflicted injuries. We agree that the justification for the classification "appears to be more fanciful than real." *Slater v. Salt Lake City*, 115 Utah 476, 494, 206 P.2d 153, 163 (1949). *See also Dodge Town Inc. v. Romney*, 25 Utah 2d 267, 480 P.2d 461 (1971). Whatever minor effect the statute has in fostering hospitality is offset by the statute's tendency to discourage the acceptance of hospitality by a guest. In short, the objective of furthering hospitality does not justify the discrimination against nonpaying automobile guests.

█ Whatever merit the hospitality justification may once have had has been lost by enactment of statutes requiring owners of automobiles to carry public liability insurance. Because automobile public liability insurance coverage is now virtually universal, it is usually not the driver who receives the benefit of the statute; it is an insurance company. In *Thompson v. Hagan*, 96 Idaho 19, 22, 523 P.2d 1365, 1368 (1974), the Idaho Supreme Court stated:

The explanation of the hospitality rationale is that hosts should not be burdened by lawsuits by ungrateful guests who do not pay for their transportation. The explanation may have had validity in 1931 when the guest statute was first enacted, but today, the widespread incidence of liability insurance has destroyed

the basis for the argument. Because of liability insurance, the statute appears to result in the protection of insurance companies, not generous hosts, from lawsuits by negligently injured guests. The fact that insurance companies are the real beneficiary of the guest statute's protection is made clear by the second justification of the guest statute of prevention of collusive lawsuits which is discussed below. The guest statute cannot be reasoned to promote hospitality by protecting hosts from lawsuits by guests. [Footnote omitted.]

Similarly, the Supreme Court of South Carolina remarked, "If the hospitality justification were ever compelling, it has lost its force today." *Ramey v. Ramey*, 273 S.C. 680, 685, 258 S.E.2d 883, 885 (1979). *See also, e.g., Henry v. Bauder*, 213 Kan. 751, 518 P.2d 362 (1974); *Laakonen v. Eighth Judicial District Court*, 91 Nev. 506, 538 P.2d 574 (1975); *McGeehan v. Bunch*, 88 N.M. 308, 540 P.2d 238 (1975). There is no rational relationship between the objective of furthering hospitality and protecting an insurance company from the negligence claim of an automobile guest.[17]

### D.

■ The second justification for the statutory discrimination, the prevention of

collusion, is likewise without merit. The plain fact is that if an injured guest and his host will run the risk of perjury as to the driver's negligence to obtain a recovery from an insurance company, they would just as likely run the risk of perjury as to payment for the ride to obtain a recovery. Furthermore, the usual tools relied on in judicial proceedings to disclose fraud—discovery, the oath and cross-examination— are as effective in the host-guest situation as in a number of other situations that could give rise to fraud. To cut off the protection of negligence law for a whole class of automobile accident victims because a few persons within the class may attempt to commit a fraud, which they could also attempt irrespective of the Guest Statute, is to discriminate invidiously.

All the states that have held their guest statutes unconstitutional have also held that collusion cannot justify the statute. *E.g., Thompson v. Hagan*, 96 Idaho 19, 523 P.2d 1365 (1974); *Nehring v. Russell*, Wyo., 582 P.2d 67 (1978).

### E.

Nor can justification be found for the statute on the theory that it reduces insur-

---

**17.** Under federal equal protection law, the courts exercise strict scrutiny of legislative classifications when fundamental constitutional rights are affected or suspect classifications are created. *E.g., Harper v. Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (fundamental rights); *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). In the instant case, we see no reason to adopt either the federal strict scrutiny test or the so-called intermediate or heightened scrutiny test. *See* Gunther, The Supreme Court 1971 Term—Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1 (1972).

Nevertheless, we deal here with the legal protection of a person's bodily integrity, a right recognized by Article I, § 11 of the Utah Constitution, which states: "[E]very person, for an injury done to him in his person ... shall have remedy by due course of law...." *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), dealt with a

similar interest in holding unconstitutional on equal protection grounds a state statute denying illegitimate children a remedy for the death of their father. The Court acknowledged that the announced state objective was to protect "'legitimate family relationships'" and recognized that "the regulation and protection of the family unit have indeed been a venerable state concern." 406 U.S. at 173, 92 S.Ct. at 1405. The court ruled that even "though the latitude given state economic and social regulation is necessarily broad, when state statutory classifications approach sensitive fundamental and personal rights, this Court exercises a stricter scrutiny." *Id.* The Court concluded that there was no valid relationship between the classes created and the promotion of the state's objective. Although *Weber* is often cited for applying a higher level of judicial scrutiny than we apply here, the result in *Weber* would, no doubt, have been the same in any event. Clearly, what is considered a "reasonable relationship" must depend to some extent upon the nature and importance of the statutory purpose to which a classification is related.

ance rates. That may be true, but there is no valid justification for achieving that objective by singling out nonpaying automobile guests. It would be just as logical to select out all victims of automobile accidents caused by Ford automobiles. That also would reduce insurance premiums, but there is no rational basis for discriminating against the disadvantaged class in either case.

## V. RULINGS OF OTHER COURTS

The clear weight of judicial authority is in accord. Since California's supreme court declared that state's guest statute unconstitutional in 1973 in *Brown v. Merlo*, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973), the following states have held their guest statutes unconstitutional under state equal protection provisions, and some have also relied on the Equal Protection Clause of the Fourteenth Amendment. *Thompson v. Hagan*, 96 Idaho 19, 523 P.2d 1365 (1974); *Bierkamp v. Rogers*, Iowa, 293 N.W.2d 577 (1980); *Henry v. Bauder*, 213 Kan. 751, 518 P.2d 362 (1974); *Manistee Bank & Trust Co. v. McGowan*, 394 Mich. 655, 232 N.W.2d 636 (1975); *McGeehan v. Bunch*, 88 N.M. 308, 540 P.2d 238 (1975); *Laakonen v. Eighth Judicial District Court*, 91 Nev. 506, 538 P.2d 574 (1975); *Johnson v. Hassett*, N.D., 217 N.W.2d 771 (1974); *Primes v. Tyler*, 43 Ohio App.2d 163, 335 N.E.2d 373 (1974); *Ramey v. Ramey*, 273 S.C. 680, 258 S.E.2d 883 (1979); *Nehring v. Russell*, Wyo., 582 P.2d 67 (1978). Prior to *Brown v. Merlo*, *supra*, the Kentucky Supreme Court declared its guest statute unconstitutional as early as 1932, in *Ludwig v. Johnson*, 243 Ky. 533, 49 S.W.2d 347 (1932). In addition, the highest state courts of New Jersey and Wisconsin have held court-made guest laws invalid. *Cohn v. Kaminetsky*, 36 N.J. 276, 176 A.2d 483 (1961); *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105 (1962). *See contra Beasley v. Bozeman*, 294 Ala. 288, 315 So.2d 570 (1975); *Davis v. Cox*, 268 Ark. 78, 593 S.W.2d 180 (1980); *Richardson v. Hansen*, 186 Colo. 346, 527 P.2d 536 (1974); *Justice v. Gatchell*, Del., 325 A.2d 97 (1974); *Clark v. Storchak*, 384 Ill. 564, 52 N.E.2d 229 (1944); *Sidle v. Majors*, 264 Ind. 206, 341 N.E.2d 763 (1976); *Botsch v. Reisdorff*, 193 Neb. 165, 226 N.W.2d 121 (1975); *Duerst v. Limbocker*, 269 Or. 252, 525 P.2d 99 (1974); *Tisko v. Harrison*, Tex.Civ.App., 500 S.W.2d 565 (1973).[18]

## VI. CONCLUSION

In sum, we hold that § 41-9-1 is unconstitutional under Article I, § 24 of the Utah Constitution.

Reversed and remanded for a trial on the merits. Costs to appellant.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.

## ON PETITION FOR REHEARING

STEWART, Justice:

The defendants, James C. and Brett Lewis, petitioned for a rehearing, contending that our holding in the main opinion that the Utah Guest Statute is unconstitutional should be applied prospectively only. In particular, they argue that the ruling

---

**18.** Although nine jurisdictions are cited as holding guest statutes constitutional, three of those jurisdictions have statutorily repealed their guest statutes (Arkansas, Colorado, and Oregon), and two of those jurisdictions have limited their guest statutes (Texas and Illinois). Therefore, only four jurisdictions other than Utah have guest statutes that have not been limited, repealed, or held unconstitutional. *See* footnotes 4–5.

*Justice v. Gatchall, supra,* and *Duerst v. Limbocker, supra,* involved only a challenge based on federal equal protection, and both cases held *Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929), dispositive. *Silver v. Silver, supra,* sustained the constitutionality of the Connecticut guest statute. Since *Silver* was decided under the Fourteenth Amendment Equal Protection Clause, it does not control our construction or application of Article I, § 24. Furthermore, the question decided in *Silver* was whether the statute unconstitutionally discriminated between automobile guests and gratuitous passengers in other vehicles. The Court held only that it could not say *a priori* that the classification was without a rational basis. Our ruling is based on different grounds and arises out of a legal environment different from that which gave rise to *Silver.*

should not apply to them because the plaintiff's cause of action arose before *Critchley v. Vance*, Utah, 575 P.2d 187 (1978), was decided, which sustained the constitutionality of the Guest Statute.

The general rule from time immemorial is that the ruling of a court is deemed to state the true nature of the law both retrospectively and prospectively. In civil cases, at least, constitutional law neither requires nor prohibits retroactive operation of an overruling decision, *Loyal Order of Moose v. County Board of Equalization*, Utah, 657 P.2d 257, 264–65 (1982); *Vaughn v. Murray*, 214 Kan. 456, 521 P.2d 262, 269 (1974), but in the vast majority of cases a decision is effective both prospectively and retrospectively, even an overruling decision. *Loyal Order of Moose*, 657 P.2d at 264; *State Farm Mutual Insurance Co. v. Farmers Insurance Exchange*, 27 Utah 2d 166, 168, 493 P.2d 1002, 1003 (1972). Whether the general rule should be departed from depends on whether a substantial injustice would otherwise occur. *Cf. Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).[1]

We may, in our discretion, prohibit retroactive operation where the "overruled law has been justifiably relied upon or where retroactive operation creates a burden." *Loyal Order of Moose*, 657 P.2d at 265. For example, we have limited or prohibited retroactive application of decisions invalidating or reinterpreting certain statutes. *See Timpanogos Planning and Water Management v. Central Utah Water Conservancy District*, Utah, 690 P.2d 562 (1984); *Rio Algom Corp. v. San Juan County*, Utah, 681 P.2d 184, 195–96 (1984); *Loyal Order of Moose*, 657 P.2d 257. In these cases, the challenged statute had been justifiably relied on, and complete retroactive application of the statute would

have irreparably burdened the individuals or entities who relied on it. *See also Board of Education v. Salt Lake County*, Utah, 659 P.2d 1030 (1983).

The defendants in this case do not argue that they justifiably relied on our prior decisions sustaining the constitutionality of the Guest Statute. There is no evidence that the defendants knew of the Guest Statute and relied upon it in offering a ride to the plaintiff. The bare assertion by defendants that our decision overrules prior cases sustaining the constitutionality of the Guest Statute, is insufficient to prohibit its retroactive application.[2]

The defendants contend that the Guest Statute had been held constitutional when the accident in the present case occurred and when it was filed, and only thereafter was held unconstitutional. They argue that our main opinion holds that the Utah Guest Statute was constitutional in 1978 when *Critchley v. Vance*, Utah, 575 P.2d 187 (1978), was decided, but has since become unconstitutional because of the enactment of the Motor Vehicle Safety Act, No Fault Insurance Act, and other provisions discussed in Part II, *supra*. That is not the case.

In the first place, the main opinion did not hold that the Guest Statute was constitutional when *Critchley v. Vance*, Utah, 575 P.2d 187 (1978), *Thomas v. Union Pacific Railroad Co.*, Utah, 548 P.2d 621 (1976), or *Cannon v. Oviatt*, Utah, 520 P.2d 883 (1974), was decided. It is true that many of the statutory provisions relied on in the Court's main opinion to demonstrate a changed legislative approach to the problem of highway carnage were in force when those cases were decided. But our ruling that a statute which is constitutional when enacted may, because of changed

1. In criminal cases, the prospective or retroactive effect of decisions involves a different range of considerations. *See Rio Algom Corp. v. San Juan County*, Utah, 681 P.2d 184, 195 (1984).

2. We are well aware that the real party in interest is really an insurance company. On rehearing, the insurance company could have moved

for leave to file an amicus brief had it felt aggrieved by a retrospective application of the decision. No insurance company, or any other party, moved to file an amicus brief. Our own research strongly suggests that the decision will have very little, if any, adverse impact on the public liability insurance industry.

conditions, become unconstitutional was not based solely on the enactment of those statutes. Our ruling was also founded on the changing use of the automobile in light of current conditions and clear-cut illogical discriminations that make the statute blatantly unfair. Furthermore, as we pointed out in footnote 12 of the main opinion, *supra*, neither *Critchley* nor *Thomas* independently analyzed the Guest Statute, but simply relied on *Cannon v. Oviatt*, Utah, 520 P.2d 883 (1974). And *Cannon*'s equal protection analysis did not address the equal protection arguments discussed in Part II of the Court's opinion.

The equal protection analysis that was made in *Cannon* is not an adequate reason to prohibit retroactive application of the present decision. On the contrary, since plaintiff's constitutional rights are at stake, the case for retroactive application is even stronger. Indeed, the injustice that would result if those guests who have been injured after *Critchley* were barred from a remedy far outweighs any prejudice to the defendant in the case.

The petition for rehearing is denied.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

ZIMMERMAN, J., does not participate herein.