**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RAYMOND A. HAIK; MARK C. HAIK,

    Plaintiffs-Appellants,

        v.

TOWN OF ALTA, a political subdivision of
the State of Utah; SALT LAKE CITY
CORPORATION, a political subdivision of
the State of Utah,

    Defendants-Appellees.

No. 97-4202
(D.C. No. 96-CV-732-J)
(Dist. of Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, BARRETT, and MURPHY** Circuit Judges.

Raymond A. Haik and Mark C. Haik (the Haiks) appeal the district court's grant of summary

judgment in favor of defendants, the Town of Alta (Alta) and Salt Lake City Corporation (Salt Lake

City) on their equal protection and taking claims.

Background

In October, 1994, the Haiks purchased lots 25, 26, 29, and 30, of the Albion Basin

Subdivision #1 (Albion Basin) located above the Alta and Snowbird ski resorts at the top of Little

---

[*]     This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

Cottonwood Canyon, east of Salt Lake City, Utah. The Haiks then contacted Alta regarding water and sewer services for their lots. Alta responded in November, 1994, that it does not provide water and sewer services to Albion Basin and referred the Haiks to Salt Lake City's Department of Public Utilities, Water Division. In April, 1995, the Haiks requested applications for building permits and sewer and water services from Alta. Alta responded that it would be premature to begin the building permit process until the Haiks had procured adequate water and approval for a full containment sewage holding tank. The Haiks then sought information from Salt Lake City regarding water service to Albion Basin. In 1996, Salt Lake City notified the Haiks that it declined to consent to the extension of Alta water pipes and water supply to Albion Basin, relying on paragraph 8 of the 1976 Water Supply Agreement and the 1991 Watershed Ordinance, § 17.04.020 of Salt Lake City's Ordinances.

Alta receives its water supply from Salt Lake City by virtue of the August 12, 1976, INTERGOVERNMENTAL AGREEMENT–WATER SUPPLY AGREEMENT SALT LAKE CITY TO ALTA CITY (the 1976 Water Supply Agreement). (Appellants' App. Vol. I, Tab 9.) The 1976 Water Supply Agreement "make[s] available to Alta for its use, . . ., the normal flow of raw, untreated water, not to exceed 265,000 gallons per day, . . .." *Id*. at 97 ¶1. Paragraph 8, relied on by Salt Lake City, contains the following restriction:

> 8. It is expressly understood and agreed that said pipelines shall not be extended to or supply water to any properties or facilities not within the present city limits of Alta without the prior written consent of [Salt Lake] City.

*Id*. at 99 ¶8. It is undisputed that Albion Basin lays beyond the 1976 Alta city limits. It is also undisputed that the Board of Health required lots to be supplied with 400 gallons of water per day as a precondition for issuance of a building permit and that the lots were each entitled to only 50

gallons of water per day from a water agreement with Little Cottonwood Water Company.

In October, 1997, the Haiks initiated this action, claiming that because Alta has surplus water and the lots are located within the current town limits, Alta had a legal duty to supply water to their lots based on Alta's historical conduct and applicable state and federal laws.[1]  *Id.* Vol. I at 6 ¶20. The Haiks contended that: (1) Alta had taken and damaged their property for public use by refusing to extend its municipal services to Albion Basin and by its refusal to grant them a building permit, in violation of Article I, Section 22 of the Utah Constitution, *id.* at 11 ¶ 39; (2) Alta's actions in furtherance of its policy of non-development have been arbitrary and capricious, depriving them of their right to substantive due process and equal protection of the law under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, *id.* at 13 ¶ 47; (3) Alta's actions deprived them of their rights to substantive due process and equal protection of the law under Article I, Sections 7 and 24 of the Utah Constitution and violated the Annexation Ordinance and Utah Code section 10-2-401(4), which required Alta to make the same level of municipal services available to their property as it does to others, *id.* at 14 ¶50; (4) they were entitled to a declaration that the 1976 Water Supply Agreement does not preclude the extension of Alta's water lines to their lots; *id.* at 15 ¶54; and (5) they were entitled to an injunction preventing Salt Lake City from raising the 1976 Water Supply Agreement as a defense to the extension of Alta's water lines and requiring Alta to make municipal services available to their lots in order to receive a building permit, *id.* at 16 ¶59.

On October 31, 1997, the district court granted summary judgment in favor of Alta and Salt Lake City.  *Id.* Vol. III at 853-81.  On the Haiks' equal protection claim against Alta, the district

---

[1]       The Haiks initiated this action in the Third Judicial District Court in and for Salt Lake County, State of Utah.  (Appellants' App. Vol. I at 1.)  Salt Lake City removed the action to federal district court.  *Id.* at 34.

court concluded that the claim "presupposed the existence of a legal a duty on the part of Alta to supply water to property owners such as the Haiks, as well as the legal and physical capacity to do so." *Id*. at 860. The court then noted that while Alta may have the physical capacity to supply water to the Haiks' lots, Alta does not have the legal capacity to do so under the terms of the 1976 Water Supply Agreement, without Salt Lake City's consent. *Id*. at 865-66. On the Haiks' equal protection claim against Salt Lake City, the court found that: (a) the Haiks "failed to establish that Salt Lake City had breached any duty [to ] reasonably . . . give or refuse consent, whether under the implied covenant of good faith dealing, or otherwise," *id*. at 872, and (b) equal protection is not available to challenge Salt Lake City's exercise of its contractual power to consent pursuant to paragraph 8 of the 1976 Water Supply Agreement because it had no legal duty to furnish water to users outside its own city limits, be they "similarly situated" or not, *id*. at 873-74. On the Haiks' annexation claim, the district court concluded that they failed to establish an express legislative or contractual duty on the part of Alta to supply water to their property and Alta cannot be fairly burdened with an implied legal duty to supply water that Alta has no legal right to use. *Id*. at 869. The court then rejected the Haiks' taking claim against Alta on the ground that "neither the Haiks nor the Town of Alta ha[d] available the water necessary to make an 'economically viable use' of the Albion Basin property through construction of residential dwelling," *id*. at 877, and the Haiks retain the "'full 'bundle' of property rights' they purchased," *id*. at 875. The court reasoned that if the loss of economic viability is caused by something other than the government regulation, it does not constitute a taking. *Id*. at 877.

On appeal, the Haiks contend that the district court erred: (1) in concluding that they could not bring an equal protection claim against Salt Lake City because it was acting in a proprietary

capacity in supplying water outside its corporate limits; (2) in concluding that Alta did not violate their right to equal protection by refusing to extend its water lines to their lots, in view of the district court's finding that Alta was physically able to supply water and they were willing and able to pay the costs of connection; (3) in failing to recognize that Salt Lake City's refusal to consent to Alta's extension of water to their lots could not be reasonable where it was not based on any finding that their proposed use would be detrimental to the watershed, but on a collusive desire to prevent any development in the upper Albion Basin; and (4) in determining no taking occurred even though they are completely unable to build on their lots.

We review the district court's order granting summary judgment *de novo*, applying the same standard as the district court. *Thomas v. International Bus. Machs.*, 48 F.3d 478, 484 (10th Cir. 1995). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We examine the factual record and reasonable inferences therefrom in the light most favorable to [the non-movants], who opposed summary judgment." *Thomas*, 48 F.3d at 484.

## Discussion

### I. Equal Protection

The Haiks argue that they have asserted a viable equal protection claim against Salt Lake City. The Haiks maintain that: (1) Salt Lake City's refusal to consent to the extension of Alta's water lines to their property is a governmental act subject to equal protection challenges, and (2) even if Salt Lake City acted in a proprietary rather than a governmental capacity, equal protection

- 5 -

challenges may be raised against governmental entities acting in their propriety capacities. The

Haiks declare that Salt Lake City's refusal to consent to Alta's extension of its water lines to their

lots could not be reasonable in that it was not based on any finding that their proposed use would be

detrimental to the watershed, but on a collusive desire to prevent any development in the upper

Albion Basin.[2] In addition, the Haiks reason that the district court erred in concluding that Alta did

not violate their right to equal protection by refusing to extend its water lines to their lots, in view

of the district court's finding that Alta was physically able to supply water and they were willing and

able to pay the costs of connection.[3]

### A. Federal Equal Protection

> According to the Equal Protection Clause of the Fourteenth Amendment, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, ___, 117 S.Ct. 2293, 2297, 138 L.Ed.2d 834 (1997). Unless a legislative classification or distinction burdens a fundamental right or targets a suspect class, courts will uphold it if it is rationally related to a legitimate end. *Id.*

*Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998).

"The interest in water for real estate development is not a fundamental right." *Lockary v.*

*Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990). *See also O'Neal v. City of Seattle*, 66 F.3d 1064, 1067

(9th Cir. 1995) (equal protection claim based on denial of water service reviewed under rational basis

---

[2]     We assume for the purposes of this discussion only that the Haiks may maintain an equal protection claim against Salt Lake City.

[3]     The Haiks initially brought their equal protection claim under both the United States Constitution and the Utah Constitution. It is unclear whether the district court considered their equal protection claim under both state and federal law or solely under state law. It is also unclear under which their appeal lies. However, in the interests of finality, we will consider their claim under both federal and state law.

standard because it affects only economic interests, not fundamental rights); *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 567 (7th Cir. 1991) ("We do not consider the right to continued municipal water service such a fundamental right; . . ..."); *Ransom v. Marrazzo*, 848 F.2d 398, 413 (3d Cir. 1988) (strict scrutiny not required because water service is not a fundamental right); *Chatham v. Jackson*, 613 F.2d 73, 80 (5th Cir. 1980) (water service not a fundamental right). Thus, to meet a constitutional challenge the state action in question needs only some rational relation to a legitimate state interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976); *Tonkovich*, 159 F.3d at 532. Moreover, because state action subject to rational basis review is presumptively constitutional, the burden is on the plaintiffs to establish that the state action is irrational or arbitrary and that it cannot conceivably further a legitimate governmental interest. *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996). "Under the rational basis test, if there is a 'plausible reason[] for [the state] action, our inquiry is at an end.'" *United States v. Castillo*, 140 F.3d 874, 883 (10th Cir. 1998) (quoting *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980)). "We need not find that the legislature ever articulated this reason, nor that it actually underlay the legislative decision, nor even that it was wise." *Id.* (citations omitted).

There are plausible reasons for Alta's refusal to extend its water lines to the Haiks' property. Alta has a legitimate state interest in not breaching its 1976 Water Supply Agreement. Alta does not have an independent right to water; it merely purchases water from Salt Lake City. Thus, while Alta may have the physical capacity to supply water to the Haiks' lots, it does not have the legal right to do so, and to compel Alta to breach its contract would be unreasonable. Nor, we add, does Alta have a legal obligation under Utah law to provide the Haiks with water. A series of Utah Supreme Court cases have specifically expressed that "a municipal corporation . . . does not have a legal duty to

provide water service to all members of the public . . . ." *Thompson v. Salt Lake City Corp.*, 724 P.2d 958, 959 (Utah 1986). *See Rose v. Plymouth*, 173 P.2d 285, 286 (Utah 1946). The Utah Supreme Court recently reinforced that a municipality need only act "reasonably" with respect to the provision of municipal services to its residents. *See Platt v. Town of Torrey* , 949 P.2d 325, 329 (1997). We find Alta treated the Haiks reasonably here.

Furthermore, Salt Lake City has a legitimate interest in preserving its watershed. The Haiks failed to establish that Salt Lake City's refusal to consent to the extension of Alta's water lines to their property was irrational or arbitrary or that it could not conceivably further a legitimate governmental interest in view of the extensive evidence presented by Salt Lake City regarding preservation of its watershed, Little Cottonwood Canyon. The Haiks challenge Salt Lake City's stated interest in protecting the watershed by noting Salt Lake City has consented to other extensions and uses not contemplated by the 1976 Water Supply Agreement. The additional uses referred to are Alta's 1995 extension, without Salt Lake City's consent, of its lines to the Alpenglow Lodge, Salt Lake City's consent in 1988 and again in 1993 to allow Alta Ski Lifts Company to use additional water for snowmaking, and Salt Lake City's consent in 1992 to provide water to the U.S. Forest Service for recreational purposes at the Albion Basin campground. Because Alpenglow sits within Alta's 1976 boundaries, extension of the lines without Salt Lake City's consent was appropriate and is irrelevant to plaintiffs' claim of unequal and irrational treatment. This same explanation applies to Salt Lake City's 1988 consent for snowmaking purposes, which was similarly limited. Finally, the City's 1992 consent to allow the Forest Service to use water for recreational purposes and 1993 consent to allow additional snowmaking were authorized by 1991 Salt Lake City ordinance § 17.04.020.B, which authorized the City to consent only to use for snowmaking or fire protection, use

- 8 -

by certain governmental entities on land owned or leased by those entities, and use by residential property owners with a spring on their property. *See* Appellant's App. at 327-28. Significantly, § 17.04 prohibits the City from consenting to any use – including extension of Alta's water lines to the Haiks' property – other than these three articulated uses, or amending any current permit to enlarge the service boundary or increase the water supply. *See id.* at 327. The Salt Lake City Council has made a rational legislative determination that the particular uses above, even if outside existing service areas, will not result in significant harm to the watershed, whereas increased residential and commercial use outside existing service areas (in this case Alta's 1976 town boundaries) will result in such damage. This classification is rational and is related to the City's stated objective of protecting the watershed.

In short, Alta and Salt Lake City proffer they had to draw the line somewhere, and chose to do so in the 1976 Agreement at Alta's 1976 town boundaries. They do not claim to be seeking to stop all development in the canyon, or even all development in Alta for that matter. Rather, their purported objective is to curtail further environmentally harmful development outside Alta's 1976 town boundaries. Line-drawing "inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the lines. [That] the line might have been drawn differently at some points is" not a matter for judicial consideration. *Federal Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 315-16 (quoting *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).

B.  Utah Equal Protection

Article I, § 24 of the Utah Constitution states: "All laws of a general nature shall have uniform operation." Utah Const. Art. I, § 24. Although this language is dissimilar to its federal

counterpart, "these provisions embody the same general principle: persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same." *Malan v. Lewis*, 693 P.2d 661, 669 (Utah 1984). "First, a law must apply equally to all persons within a class." *Id.* at 670. "Second, the statutory classifications and the different treatment given the classes must be based on differences that have a reasonable tendency to further the objectives of the statute." *Id.* If the relationship of the classification to the objectives is unreasonable or fanciful, the disparate treatment is unreasonable. *Id.* We presume that the state acted on a reasonable basis. *Id.* at 671 n.14. However, that presumption does not require us to accept any conceivable reason for the state action. *Id.* "Rather, we judge such enactments on the basis of reasonable or actual . . . purpose." *Id.* Additionally, a municipal corporation "does not have a legal duty to provide water service to all members of the public, . . .." *Thompson v. Salt Lake City Corp.*, 724 P.2d 958, 959 (Utah 1986).

Alta consistently refused to extend its water lines outside its 1976 city limits without Salt Lake City's permission. Thus, Alta treats all persons in the class of property owners outside its 1976 city limits, including the Haiks, the same. Furthermore, Alta's and Salt Lake City's actions were reasonable.

Therefore, we hold that Alta and Salt Lake City did not violate the Haiks' equal protection rights under either federal or state law.

## II. Taking

The Haiks contend that the district court erred in determining no taking occurred even though they are completely unable to build on their lots. The Haiks assert that it is immaterial that Alta has not expressly prohibited building in the Albion Basin because by denying them a building permit for

their lots without culinary water, Alta has deprived them of all viable economic use of their property. Additionally, the Haiks point out that a regulatory taking can exist even when no exaction has been demanded by the state and that it is immaterial that the applicable regulations and ordinances predated their ownership as a property owner can "come" to a taking.[4]

The Haiks brought their taking claim exclusively under Article I, § 22 of the Utah Constitution, which provides, "Private property shall not be taken or damaged for public use without just compensation."[5] Utah Const. Art. I, § 22. "This provision is broader in its language than the similar provision in the Fifth Amendment of the United States Constitution." *Bagford v. Ephraim City*, 904 P.2d 1095, 1097 (Utah 1995). To recover, "a claimant must possess a protectable interest in property that is taken or damaged for a public use." *Id. See Farmers New World Life Ins. Co. v. Bountiful City*, 803 P.2d 1241, 1243-44 (Utah 1990); *Colman v. Utah State Land Bd.*, 795 P.2d 622, 625 (Utah 1990). In *Colman*, the Utah Supreme Court observed:

> Many statutes and ordinances regulate what a property owner can do with and on the owner's property. Those regulations may have a significant impact on the utility or value of property, yet they generally do not require compensation under article I, section 22. Only when governmental action rises to the level of a taking or damage under article I, section 22 is the State required to pay compensation.

*Coleman*, 795 P.2d at 627. "[A] 'taking' is 'any substantial interference with private property which

---

[4]     The Haiks brought this claim solely against Alta. Therefore, we will not consider the Haiks' statements on appeal that, "No taking of the full economic use of the Haiks' property occurred until Salt Lake City denied its consent to extend water to them in 1996. In refusing to consent, Salt Lake City went beyond what the relevant background principles would dictate and hence worked a taking." (Brief for Appellants at 37) (internal quotation and citations omitted).

[5]     Therefore, we will not consider the Haiks' appellate arguments that Alta's actions constitute a taking under the Fifth and Fourteenth Amendments to the United States Constitution. *See* Brief for Appellants at 32 ("The denial of a building permit to the Haiks constitutes a taking for which the Fifth and Fourteenth Amendments require just compensation, . . .."); *id*. at 37.

destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed.'" *Id.* at 626 (quoting *State ex rel., State Road Comm'n v. District Court, Fourth Judicial Dist. in and for Utah County*, 78 P.2d 502, 506 (Utah 1937)).

The district court found that "[t]he Haiks still have in October 1997 what they purchased from Marvin Melville in October of 1994: lots in Albion Basin Subdivision #1 with appurtenant water rights limited to 50 gallons per day per unit under the 1963 agreement. They retain the "full 'bundle' of property rights" they purchased." (Appellants' App. Vol. III at 875.) "[T]hey still lack the "one 'strand' of the bundle" that their predecessor in interest also did not have: a legal right to use water in an amount sufficient to satisfy the health department requirement of 400 gallons per day per unit." *Id.* at 876. The district court determined that "[t]he Haiks cannot build on their property, not because Alta or Salt Lake City have changed the rules, but rather because the rules remain the same." *Id.*

The Haiks cannot maintain a taking claim because they did not have a protectable interest in property that was taken or damaged by Alta's denial of a building permit. Alta's denial of a building permit was based on the health department requirement of 400 gallons of water per day per unit, which the Haiks did not meet. As the Court in *Coleman* pointed out, "'[m]any statutes and ordinances regulate what a property owner can do with and on the owner's property . . . yet they generally do not require compensation . . . ." *Coleman*, 795 P.2d at 627. This is but one of many such regulations. *See Smith Inv. Co. v. Sandy City*, 958 P.2d 245, 253 (Utah Ct. App. 1998) ("If the ordinance and the state policies and reasons underlying it do, within reason, debatably promote the legitimate goals of increased public health, safety, or general welfare, we must allow . . . legislative judgment to control."). Furthermore, mere expectation of municipal water service in the future is

not a legal right that constitutes property subject to taking.  *See Bagford*, 904 P.2d at 1099 (expectation of renewal of lease not property subject to taking).  Therefore, we hold that no taking occurred under the Utah Constitution Article I, § 22.

    **AFFIRMED.**

Entered for the Court:


James E. Barrett,
Senior United States
Circuit Judge